## FAWKES v. AMERICAN MOTOR CAR SALES CO.

(Circuit Court, D. Minnesota, Fourth Division. March 18, 1910.)

CORPORATIONS (§ 668*)—FOREIGN CORPORATIONS—CIVIL ACTIONS—PROCESS— AUTHORITY OR CAPACITY OF PERSON SERVED.

Defendant, a New York corporation, with its principal place of business in Ohio, was the exclusive sales agent for certain automobiles. It had no depot or warehouse in Minnesota, and at the time the action was commenced had no property in that state. The summons was served on B., M. B., and S. as defendant's resident agents. B. was defendant's northwestern sales agent, working entirely on commission, with authority only to accept orders from dealers for automobiles, but not to make contracts, all of which were closed direct with defendant and payments made to the factory. M. B. was employed by defendant to travel in the northwestern territory. ascertain from dealers what cars required new parts, to make lists of the parts so required, and send them to the company at its home office, and S. was a mechanic, employed by defendant to repair, or cause to be repaired, all of its automobiles of 1909 model needing or requiring repairs in the city of Minneapolis. *Held*, that none of such

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

representatives was the agent of defendant in such a sense as to make service on him service on defendant.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603–2627; Dec. Dig. § 668.*

Service of process on foreign corporations, see notes to Eldred v. American Palace Car Co., 45 C. C. A. 3; Cella Commission Co. v. Bohlinger, 78. C. C. A. 473.]

Action by Leslie H. Fawkes against the American Motor Car Sales Company. On motion to set aside the service of summons. Granted.

Larrabee & Davies and John F. McGee, for plaintiff.
Welch & Shearer, for defendant.

WILLARD, District Judge. The plaintiff, a citizen of Minnesota, brought this action in the district court of Hennepin county, Minn., against the defendant, a corporation organized under the laws of the state of New York. On the 11th day of February, 1910, the summons was served upon the defendant by the delivery of a copy to W. J. Bowman and another copy to M. R. Bookwalter, both of them then being in the city of Minneapolis, Minn., and on the 16th day of February, 1910, service was also made by delivering a copy of the summons to R. M. Shewmacher at Minneapolis. The defendant removed the case into this court, and now has appeared specially and moved to set aside the service of the summons.

It appears from the evidence that the defendant is a corporation of the state of New York, with its principal place of business at Toledo, Ohio. Its exclusive business is the sale of two types of automobiles, known as the "Overland" and the "Marion" cars, of which it has the exclusive sale, but it does not manufacture the machines. On the 3d day of January, 1910, the defendant made a contract with Bowman, the person on whom the service was made, who then resided in the city of Minneapolis. It is stated in that contract that Bowman was employed by the defendant as its factory sales representative in certain territory, which comprised a part of Wisconsin, nearly all of Minnesota, all of North Dakota, a part of South Dakota, and a part of Montana. The powers that were given to Bowman by the contract, however, were specifically set forth therein. He was authorized to canvass the territory, establish dealers, and procure contracts with them to handle and sell the automobiles above mentioned. The contract and the other evidence offered on the hearing showed that the dealers whom Bowman was to secure were themselves to contract directly with the company, and not with Bowman; that the contracts between these dealers and the company did not make the dealers the agents for the company, but constituted outright sales of the machines to them. They were required to pay for the machines before they left the factory at Indianapolis; or, if that was not done, a draft for the price was attached to the bill of lading which accompanied the shipment, and the machine could not be obtained by the dealer or purchaser until the draft was paid. By the terms of his agency, Bowman had no authority to make contracts binding upon the company

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for the sale of any machine, and he never had any machines in his possession in the state. The company maintained no warehouse or other depository for the machines or other property belonging to it in the state, and at the time this action was commenced had no property in this state. Bowman rented an office in Minneapolis, but the expense thereof was paid entirely by him. He received no salary from the defendant, and his compensation arose entirely from commissions which the defendant paid him upon such machines as it might sell to dealers through his procurement.

Three cases were cited in the argument which upon the facts above stated must control the decision of this motion. One was decided in the Supreme Court of the United States (Green v. Chicago, Burlington & Quincy Railway Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916), another was decided in the Supreme Court of the state of Minnesota (North Wisconsin Cattle Co. v. Oregon Short Line R. R. Co. et al., 105 Minn. 198, 117 N. W. 391), and the third was decided in this court (Boardman v. S. S. McClure Co., 123 Fed. 614).

In the first case—Green v. C., B. & Q. Ry. Co.—the defendant employed one Harry E. Heller and hired an office for him in Philadelphia, designating him as district freight and passenger agent. His business was to solicit and procure passengers and freight to be transported over the defendant's lines, which did not extend east of Chicago. In conducting this business several clerks and various traveling passenger and freight agents were employed. He sold no tickets and received no payments for transportation of freight. Occasionally he sold to railroad employés who already had tickets over intermediate lines orders for reduced rates over the defendant's lines. In some cases, for the convenience of shippers who had received bills of lading from the initial line for goods routed over the defendant's lines, he gave in exchange therefor bills of lading over the defendant's lines. That action was brought by the plaintiff, a citizen of Philadelphia, in the Circuit Court of the United States for the Eastern District of Pennsylvania, and service was made upon Heller in Philadelphia. The court said:

"It is obvious that the defendant was doing there a considerable business of a certain kind, although there was no carriage of freight or passengers. * * * The business shown in this case was, in substance, nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it."

In the second case, the one from Minnesota, it appeared that D. M. Collins and H. F. Carter were in the employ of the defendant the Union Pacific Railroad Company, and that it maintained a permanent office in the city of Minneapolis for their use, and hired to assist them some other employés. Collins and Carter were engaged in influencing shippers of freight and prospective passengers to use the lines of the Union Pacific Railroad Company, no part of which extended into Minnesota. They did not make contracts with shippers or passengers, but secured results, if at all, by inducing such passengers and shippers to route goods or buy tickets over the Union Pacific

lines. The business done by them was fairly described as soliciting business for and advertising their employer. In carrying on this business, the company maintained in Minnesota a permanent office on a fairly extensive scale. The service of the summons was made upon the Union Pacific Company by delivering a copy to Collins in Minneapolis. The court said:

"We have, then, the question whether upon the ultimate facts herein stated the summons was duly served upon the defendant within the meaning of our statute (R. L. 1905, § 4109, subd. 3), which reads as follows: 'If the defendant be a foreign corporation, the summons may be served by delivering a copy to any of its officers or agents within the state. * * * The statute does not require in express terms that the foreign corporation must be doing business within the state in order to justify the service of a summons against it upon its agent; but this is necessarily implied, for it could not be represented within the state by an agent unless it was doing business therein. * * * The statute, however, does not define the character of the business, the doing of which in the state will subject it to the process of the court by service on its agents. It simply provides that service may be made upon the agents of the corporation. Therefore a foreign corporation sending its agents into this state impliedly consents that, if they do for it any acts which constitute doing business within the state, as that term is defined by its court, process against it may be served on such agents. The solicitation of passenger and freight traffic in the state is not within that term. We accordingly hold that the facts of this case do not justify the conclusion that the respondents herein were, or either of them, doing business within this state, so as to authorize the service of the summons upon their soliciting agent."

The last case, the one from this court, was decided by Judge Lochren. In that case the defendant, a New York corporation, was in the business of publishing books and other publications, including periodicals, and including a magazine known as "McClure's." It circulated its magazines in Minnesota by mail from New York. In its magazine business the advertising receipts were twice its circulation receipts. It did a large advertising business in Minnesota, which it obtained there through its traveling solicitors, and especially through Little, the man upon whom service in this case was made. Little traveled through the Western states, including Minnesota, working up advertising business for the magazine, and soliciting and taking orders for advertising. He could only quote rates as fixed by the home office, and his orders as to space and copy were subject to the approval of the home office. He could not make definite contracts, but took orders and submitted them to the defendant.

Referring to the Minnesota statute relating to the service of process upon foreign corporations, the court said:

"I think it would be going too far to hold that under this statute a jobbing corporation who has traveling men sent through the country to solicit orders for goods or wares can be held, under a statute like this, to be doing business wherever those solicitors go, and that it is liable to be served with process by delivering copies of the process to such traveling men going about the country. They would not be transacting the general business of the corporations, which would be to sell goods, either goods that they were dealing in or goods that they were manufacturing. * * * It does not seem to me that it is transacting business in Minnesota simply by having solicitors for advertisements here, and that appears to have been the extent of Mr. Little's business. The testimony of those who are presumed to have knowledge on the subject, of Mr. Little himself, and of Mr. Brady is that he had no authority to make contracts, even for advertisements, but simply to solicit orders, to procure

persons to forward proposed advertisements to the company, or perhaps he took the proposed advertisements, and forwarded them himself, and that from the rates which are made public in the magazine, or in instructions which he had he could assure the persons of whom he solicited advertisements in respect to the rates, and what would be charged for the advertisements if they were inserted, but he did not make definite contracts. The name which such person assumes, even with the knowledge of his principal, will not be controlling, when the real character of his employment appears. I think it was entirely like the employment of ordinary traveling men or runners, who doubtless are able to name the prices of goods for which they seek orders, although they may not be able to make definite contracts that all these orders will be supplied. The dealer may not have the goods to supply them, and may be unable to fill the order, nor required to do it."

In the case of the Mechanical Appliance Co. v. Castleman (decided by the Supreme Court of the United States on January 3, 1910) 215 U. S. 437, 30 Sup. Ct. 125, 54 L. Ed. ——, it was held that the defendant corporation was not doing business in the state of Missouri at the time of the attempted service of process, and that the person named in the return of the sheriff was not at that time the duly authorized agent of the defendant corporation. The decision, however, does not state the facts which appeared from the affidavits presented in that case.

The facts in the case at bar bring it within the three decisions first above cited. Bowman had no authority to make any contracts for the sale of any automobiles. His powers were limited to soliciting orders and submitting them to the defendant at its office either in Toledo or Indianapolis, and the definite agreement was there made.

Some evidence was introduced by the plaintiff tending to show that the defendant had held Bowman out as being its agent, and that he did business under the name of the "Northwestern Overland Company, W. J. Bowman, Manager." But, as said by Judge Lochren in the case last cited, "the name which such person assumes, even with the knowledge of his principal, will not be controlling, when the real character of his employment appears." The same doctrine was announced by the Supreme Court of Minnesota in the case of Wold v. J. B. Colt Co., 102 Minn. 386, 114 N. W. 243. The court there said:

"It appears from the affidavits that Burt was not in fact the agent of the corporation, but that he was engaged in selling an acetylene gas generator, manufactured by the corporation, in certain counties in the state of Minnesota, under circumstances which might possibly justify a court in holding that the corporation had held him out as its agent, and would therefore be estopped in the action from denying that he was its agent. The question is whether jurisdiction over a foreign corporation can be obtained by the service of the summons upon a person who is not in fact its agent, but who may for the purpose of the trial be held an agent by the application of the doctrine of estoppel."

That question the court proceeded to discuss and decide in the negative, saying:

"It is well settled by authority that the agent upon whom service may be made must be one having in fact a representative capacity. In Prof. Beale's recent work on Foreign Corporations (section 271) it is said: 'A person who is not really employed by the corporation, but is merely an agent by estoppel or by construction of law, is not a proper person to serve.'"

The service of the process upon Bowman was not a sufficient service upon the company. Nor can the service upon Shewmacher and Bookwalter be sustained. The former was a mere mechanic employed by the defendant since the 24th day of January, 1910, solely to repair or cause to be repaired all Overland automobiles of the 1909 model needing or requiring repairs in the city of Minneapolis. Bookwalter on the 24th day of January, 1910, entered into the employ of the defendant upon an agreement, by the terms of which he was to travel about in the northwestern territory and interview dealers handling Overland automobiles, and ascertain from such dealers what Overland cars, if any, in their territory required any parts, and, if so, what parts in the way of repairs they required; also to make lists of the parts so required in the various localities and send in to the company at its home office in Toledo, Ohio, orders for such parts. Bookwalter also stated in his affidavit that the defendant company had no depot or warehouse in Minneapolis for storing and distributing cars, supplies, or parts for said machines, and has not had since he has been in their employ any depot or warehouse in Minneapolis for the storing or distribution of cars, supplies, or parts of said machines.

The motion to set aside the service of the summons, upon Bookwalter, Bowman, and Shewmacher is granted, and the service of the summons upon each one of the three persons above named is hereby set aside and declared void.