## SOUTHEASTERN DISTRIBUTING COMPANY *v.* NORDYKE & MARMON COMPANY.

1. It is essential to the legal rendition of a personal judgment against a foreign corporation, otherwise than by its voluntary appearance, that the corporation be doing business, either intrastate or interstate, within this State, and that such business be a part of the business for which the corporation was organized, and not a mere incident to such business.

2. A foreign corporation, manufacturing automobiles outside of this State, and selling them to distributors within this State by means of closed bills of lading with drafts attached, with directions to notify such distributor, and sent to a bank in this State for collection, when the distributor pays such drafts and thus acquires title to the cars so bought

from the manufacturer, is not doing business in this State, so as to subject it to the process of the courts of this State, by the employment of a district superintendent whose territory embraces this State, and whose duties are to visit distributors and dealers so buying automobiles from his principal, to assist such distributors and dealers in every way possible in selling the automobiles so bought, to keep up with the business done by such distributors and dealers, and make reports thereof to the company at its home office, to see that distributors and dealers render proper service to users of such cars, and to select such distributors and dealers, subject to the approval of the company, and execute in the name of the company tentative contracts with distributors and dealers, to be sent to the home office of the company to be approved by it and countersigned by one of its executive officers; such district superintendent making no sales of cars for his company in this State, and making no contracts with its distributors and dealers except in the manner above stated.

No. 4380.    October 17, 1924.

Equitable petition. Before Judge Humphries. Fulton superior court. March 14, 1924.

The Southeastern Distributing Company, on May 1, 1923, filed in Fulton superior court its equitable petition for accounting and for damages against the Nordyke & Marmon Company. This suit was served by leaving a copy thereof and process with one Haskell, who, in the return of service, was described as the agent of the defendant, "transacting and doing business of said corporation in Fulton County, Georgia." The defendant entered a special appearance in the cause, solely for the purpose of contesting the jurisdiction of the court; and filed its plea to the jurisdiction and a traverse of the return of service, without submitting to the jurisdiction of the court, or waiving any of its rights as a nonresident corporation of the State of Georgia. It alleged that it was a corporation of the State of Indiana, with its principal office and place of business in Indianapolis, and that it had no place of business, office, agent, employee or representative in Fulton County, Georgia, at or since the filing of this suit, upon whom legal service of process against it could be made, and that neither at the time of filing the suit nor at any time thereafter had it done business in the State of Georgia, or maintained an office or place of business in this State, or employed an agent who maintained such an office. By written consent of the parties this plea to the jurisdiction was tried by the judge without the intervention of a jury, the consent order providing that the question of jurisdiction raised in the defendant's plea should be submitted to the judge for

his final determination of all questions of law and fact connected therewith.

On the trial of the issue thus raised, the evidence was as follows: The Nordyke & Marmon Company is a foreign corporation, chartered under the laws of the State of Indiana. Its charter declares that its "operations shall be carried on at the City of Indianapolis in Marion County in the State of Indiana;" and that "the objects of the formation of said company shall also be the manufacturing, constructing and sale of all kinds of mills and parts thereof, including mill supplies, motor-vehicles of all kinds, their parts and accessories, and to buy and sell merchandise of all kinds similar or incident to any of the machinery, mills, merchandise, or other products so to be manufactured." The Marmon-Atlanta Company, a Georgia corporation, in February, 1923, became the distributor in this State for Marmon cars under a contract with the defendant, and the course of business done between them was that cars were sold by the defendant to the distributor at wholesale prices, to be by it in turn resold to retail purchasers. These cars were shipped on closed bills of lading with drafts attached, with "order notify" directions to the distributor. The drafts and bills of lading came to an Atlanta bank, when the drafts were taken up and the bills of lading surrendered to the distributor, and title to the cars passed to the distributor at that time. Haskell, the agent of the defendant, on whom it was sought to perfect service, was employed on a salary basis and was under the direction of one Brooks, sales manager of the defendant, with his office in Indianapolis. Haskell lived in South Carolina. He was assigned to a territory embracing Maryland, Virginia, Eastern Tennessee, North Carolina, South Carolina, Georgia, and Florida. His title was "district representative," and he was furnished with business cards bearing the name, "Nordyke & Marmon Company," across the face, and at the lower left-hand corner appeared his name and said title. Haskell's duties are described by himself as follows: "My duties as road man are to assist the dealers in every way possible in furthering their business, conveying ideas from one dealer to another, showing where they can improve their service to the owners. I do not sell any cars. I assist them and demonstrate cars to prospects, but I never close a deal. . . At the time I was served with process in this suit, on or about May 1, 1923, the object and purpose of

my being in Atlanta was to assist the dealer in every way I possibly could—just general business, that is the ordinary business for which I have been employed. I do not take any orders for cars in the territory, to be forwarded to the home office. The dealer usually sends them in. It is very exceptional that I would receive an order. . . If a person would give me an order, I would never turn it down. . . I had no prescribed routine for this territory. I do not make a periodic circuit of the territory, just wherever a dealer would like to have my assistance. I have no office with headquarters; dealers get in touch with me at my home in Greenville. . . My entire time was supposed to be spent on the road, going from one place to another throughout this territory, and furthering in general the interests of the Nordyke & Marmon Company, through the dealer, by building up the dealer's organization. I also arrange to have dealers in various places that I think are advantageous. I made the arrangement primarily with the Southeastern Distributing Company, whereby it became the dealer or distributor in this territory. I looked over their assets and liabilities, and their ability to handle our account here. I signed the name of the Nordyke & Marmon Company to the contract between it and the Southeastern Distributing Company. . . The contract is signed up here by me and the proposed dealer or distributor, and then I send that in to the home office, where it is countersigned, if it is approved. . . It is customary that somebody down here on the ground has got to approve the situation, and be familiar with it, and recommend it to the home office, and that is one of my duties, and that duty I exercised in connection with the Southeastern Distributing Company. . . After the Southeastern Distributing Company's contract ended, I then undertook to arrange for another distributor in this territory. . . Mr. Thompson had advised the factory that he might be interested in a contract, and they instructed me to get in touch with Mr. Thompson, and my negotiations ended in a contract with him. I signed this contract, 'Nordyke & Marmon Company, by J. A. Haskell,' and that contract was signed by me and Mr. Thompson for the Marmon-Atlanta Company, and sent in and o. k.'d by the company at Indianapolis. . . My general duties are to assist the dealers and distributors in every way possible, the end in view being to see that distributors or dealers put as many cars as possible

in the hands of users, and that those users are given adequate and satisfactory services, so that they become satisfied owners. It is my duty first to establish a dealer, and then after he is established it is my duty to see that he produces business, and by producing business I mean selling Marmon cars; and after he has produced business, and has sold the cars, it is my duty to see that he renders adequate service to the customers. I don't go over his books and records to ascertain that. I don't believe I have ever examined the books of a dealer, or anything of the kind. I get the information by word of mouth, and report to the company the number of unsold cars on hand, that haven't been sold; and if it is necessary or convenient, I will demonstrate a car to a prospective customer, and endeavor to interest him, but I wouldn't sell the car to him. The sale would have to be made through the dealer, by reason of their contract. They have an exclusive contract, but I assist in consummating sales. Among my duties I convey to the distributors ideas of the salesmanship and service, from one dealer to another, or the ideas that the company have on the subject. I am paid this salary in this territory to do anything that the company wants me to do in connection with the pushing of the sale of their product. They manufacture automobiles, and I am engaged in the automobile end of their business. I represent the company in these various States I travel as their district representative."

Haskell's testimony as to his duties is substantially corroborated by the testimony of Purdy, treasurer, Saxon, collection and credit manager, Heiskell, vice-president, and Brooks, sales manager, of the defendant company. It appears that Thompson, president of the Marmon-Atlanta Company, when the contract between that company and the defendant was entered into, by which that company became the distributor of defendant, gave to Haskell a check for $500 to cover the deposit required by defendant in the contract; that Haskell, in the course of his duties, had been in the territory with Thompson two or three times, going to Macon and Augusta to establish subdealers; and that the defendant employed at its own expense mechanics whose duties required that they travel throughout the various territories to give service on Marmon cars; that one such mechanic had done work for Thompson in his garage two or three times during 1923; and that Haskell put Thompson

in touch with the two automobiles involved in this case, as a result of which Thompson bought them.

Under the contract between the defendant and the Atlanta Marmon Company, the former granted to the latter, as distributor, "subject to the conditions and stipulations hereinafter expressed," the right to purchase from the former, upon the terms, prices, and discounts set out, for resale within given territory, Marmon motor cars, automobile bodies and chasses, as the distributor may from time to time order, and as the defendant may from time to time manufacture. The defendant has the right to enter into contracts with other automobile dealers, hereinafter referred to as "dealer," within distributor's territory for the sale of Marmon cars, but on any purchases under such contracts by the "dealer" the distributor shall be entitled to compensation equal to the difference between the defendant's discounts to the distributor and the dealer. This compensation is to be paid to the distributor in consideration of the distributor intensively co-operating with the dealers as follows: 1. Supplying dealer, so far as possible, Marmon motor cars and parts, at prices agreed upon between the dealer and the company as stated in dealer's contract with the company. 2. Providing adequate distributing facilities. 3. Maintaining an adequate stock of cars and parts to supply the trade territory. 4. Advertising in distributor's local newspapers having a general circulation in the territory. 5. Working territory with an exclusive wholesale representative with ability to develop business through the dealer. 6. Giving the dealer such sales co-operation from time to time as is necessary to develop dealer's Marmon retail business. 7. Writing all dealer contracts on defendant's regular form, such contracts not to be effective until approved by an executive officer of the company. 8. Giving, to the satisfaction of defendant, all reasonable support and co-operation to the dealer in the sale and servicing of Marmon cars. Any motor cars sold by the defendant to the dealer are to be considered a part of distributor's estimated requirement for the month, and an equivalent cancellation of distributor's orders shall be accepted by the defendant upon his request. The distributor shall not directly or indirectly handle or sell other makes of motorcars of competing or similar type to Marmon motor-cars. The distributor shall maintain a suitable salesroom and material, equipment, repair and service shop for repairing Marmon cars in its

territory, and for that purpose carry a stock of Marmon car parts to enable quick repair service to Marmon cars. The defendant agrees to furnish the distributor from time to time current Marmon catalogs and other regular Marmon advertising literature. The distributor agrees to do local advertising devoted specifically to Marmon cars, the minimum to be expended annually to be not less than $1,000. The distributor shall, within the calendar week when retail sales are made, furnish the defendant a true copy upon defendant's regular order form for such sale, and shall furnish the company within the week of delivery the car number and the name of the retail purchaser, on the form provided by the defendant. The defendant agrees to pay the distributor $10 for the combined sale and delivery report. Should the distributor fail at any time to co-operate with any dealer to the satisfaction of the defendant, or not work any part of his territory to the defendant's satisfaction, or has not sold therein the number of cars the defendant believes should have been sold, then the defendant, upon ten days written notice, shall have the right to disannex such territory. The contract contains various provisions concerning the violation of contractual restrictions, which shall be construed as an agreement between the distributor and all other Marmon distributors and dealers, and for the benefit of the latter. The defendant also reserves the right to sell its Marmon cars, bodies, or chasses to any corporation, firm, or person in the distributor's territory from whom it purchases supplies, materials, parts or advertising, but on any such sales the defendant agrees to pay the distributor a commission of 5 per cent. The defendant also reserves the right to sell its cars, bodies, or chasses to the United States Government. The distributor is to furnish the defendant with copies of all selling agreements, other than with retail salesmen, entered into in the territory; and no such sale arrangements are to be made without its written consent.

The trial judge sustained the traverse and plea to the jurisdiction, and dismissed the action. To this judgment the plaintiff excepted.

*Smith, Hammond & Smith,* for plaintiff.

*T. B. Higdon* and *Fesler, Elam & Young,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. A corporation is not always present where its officers or

agents may transact business in its .behalf under authority con-
ferred by it. *Reeves* v. *Southern Ry. Co.,* 121 *Ga.* 561 (49 S. E.
674, 70 L. R. A. 513, 2 Ann. Cas. 207). It is now well settled that
it is essential to the legal rendition of a personal judgment against a
foreign corporation, otherwise than by its voluntary appearance,
that the corporation be doing business within the State. *Vicks-
burg &c. Ry.* v. *DeBow,* 148 *Ga.* 738 (98 S. E. 381) ; St. Louis
S. W. Ry. v. Alexander, 227 U. S. 218 (33 Sup. Ct. 245, 57 L. ed.
486, Ann Cas. 1915B, 77) ; International Harvester Co. v. Ken-
tucky, 234 U. S. 579 (34 Sup. Ct. 944, 58 L. ed. 1479). In order
to give the courts of this State jurisdiction of a suit against a
foreign corporation and to authorize proper service of process upon
it, the business which the corporation is conducting in the State
must be a part of the business for which it was organized. 14A
C. J. 1373; *Vicksburg &c. Ry.* v. *DeBow,* supra; Booz v. Texas &c.
R. Co., 250 Ill. 376 (95 N. E. 460) ; Home Lumber Co. v. Hopkins,
107 Kan. 153 (190 Pac. 601, 10 A. L. R. 879). If what is done
in this State is a mere incident to such business of the corporation,
it will not give the courts of this State jurisdiction of the foreign
corporation. *Vicksburg &c. Ry.* v. *DeBow,* supra. Whether a
foreign corporation is doing business in this State in such a sense
as to make it amenable to the jurisdiction of the courts thereof is,
in its last analysis, a question of due process of law under the con-
stitution of the United States. 14A C. J. 1372; *Vicksburg &c. Ry.*
v. *DeBow,* supra. Before a foreign corporation is amenable to
process to enforce a personal liability, in the absence of consent, it
must be doing business within this State in such a manner and to
such an extent as to warrant the inference that it is present in this
State. Philadelphia &c. R. Co. v. McKibbin, 243 U. S. 264 (37
Sup. Ct. 280, 61 L. ed. 710) ; St. Louis &c. R. Co. v. Alexander,
supra; Smithson v. Roneo, 231 Fed. 349. The presence of a
foreign corporation within this State, such as is necessary to the
service of process upon it, is shown when it appears that the cor-
poration is here carrying on business in such a sense as to manifest
its presence within this State, although the business transacted may
be entirely interstate in its character. International Harvester
Co. v. Kentucky, supra. This principle was distinctly announced
by this court in the *DeBow* case. In that case this court said:
"The question as to whether a foreign corporation is 'doing busi-

ness' in the State, so as to be subject to the jurisdiction of the courts of the State, is entirely distinct from the question as to whether such a corporation is 'doing business' in the State within the purview of the act prescribing the conditions upon which such corporations may be allowed to do business within the State; and that it does not follow that business which, by reason of the inter-state-commerce law, does not bring the corporation within the latter statute, may not nevertheless bring it within the statute providing for the service of process."

It was said by the Supreme Court of the United States in International Harvester Co. v. Kentucky, supra: "Each case must depend upon its own facts, and their consideration must show that this essential requirement of jurisdiction has been complied with, and that the corporation is actually doing business within the State." So in this case, if the defendant corporation was not doing business within this State, to the above extent and in the above sense, when service of process was attempted to be made upon its agent in this State, then the trial court had no jurisdiction, and valid service could not be perfected upon it by service of process upon its agent who was then in this State.

2. Was the defendant doing business in this State to the extent and in the sense above defined? In order to answer this question, it will be profitable to examine the cases in which it has been held that foreign corporations were so doing business. By the weight of judicial authority, both State and Federal, the taking of orders by an agent, subject to the approval of a corporation at its office or place of business outside the State, constitutes doing business within the State so as to render the corporation liable to suit. International Harvester Co. v. Kentucky, supra, s. c. 147 Ky. 655 (145 S. W. 393); Ryerson v. Wayne, 114 Mich. 352, (72 N. W. 131); Toledo &c. Scale Co. v. Miller, 38 App. D. C. 237; McSwain v. Adams Grain &c. Co., 93 S. C. 103 (76 S. E. 117, Ann. Cas. 1914D, 981); Vicksburg &c. Ry. v. DeBow, supra. In such a situation "such corporation may be required to answer in this State to such person for a cause of action arising out of business or transactions so initiated." Vicksburg &c. Ry. v. DeBow, supra; Armstrong Co. v. New York &c. R. Co., 129 Minn. 104 (151 N. W. 917, L. R. A. 1916E, 232, Ann. Cas. 1916E, 335). While this is true, this court said in the DeBow case that "the mere so-

licitation of business within the State, 'unaccompanied by a local performance of contract obligations,' is not 'doing business' within the State so as to bring the corporation within the jurisdiction of the courts of the State." In People's Tobacco Co. *v.* American Tobacco Co., 246 U. S. 79 (38 Sup. Ct. 233, 62 L. ed. 587, Ann. Cas. 1918C, 537), the Supreme Court of the United States said: "As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that State, . . the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it." In that case, the defendant company "was selling goods in Louisiana to jobbers, and sending its drummers into that State to solicit orders of the retail trade, to be turned over to the jobbers, the charges being made by the jobbers to the retailers." These agents were not domiciled in the State, and did not have the right or authority to make sales on account of the American Tobacco Company, collect money, or extend credit for it. Under these facts the Supreme Court of the United States held that the American Tobacco Company was not doing business in the State of Louisiana so as to be subject to the processes of the courts of that State.

Where a domestic corporation entered into a contract with a foreign manufacturing corporation, whereby the former agreed to handle the manufactured products of the latter, and where it was provided in such contract that the domestic corporation should purchase such products in its own name upon orders to be filled in another State by such foreign corporation, and that, when so purchased, the goods should become the property of the domestic corporation, and such domestic corporation sold such goods throughout the State by its traveling agents, it was held that such transactions did not constitute doing business within the State by the non-resident corporation, and that service of summons upon the domestic corporation was not service upon the foreign corporation. It was likewise held, that where a foreign manufacturing corporation having such a contract sent its traveling agents into the domestic State for the purpose of advertising the goods and pushing the sales by giving exhibitions and demonstrations of the merits of such goods, and by assisting the agents of the domestic corpora-

tion in getting customers and orders for such goods, such orders to be filled by the domestic corporation out of its stock, such acts or transactions on the part of such agents did not constitute doing business within the State by the foreign corporation so as to subject the foreign corporation to the processes of the courts of the domestic State.    Harrell *v.* Peters Cartridge Co., 36 Okla. 684 (129 Pac. 872, 44 L. R. A. (N. S.) 1094).

In Advance Lumber Co. *v.* Moore, 126 Tenn. 313 (148 S. W. 212), it was held that a foreign corporation engaged in the business of buying and selling lumber, which maintained an office in the State in charge of a resident agent, who made no sales, but looked after the purchasing business in adjacent States, was not engaged in business within the State within the meaning of an act prohibiting a foreign corporation from doing business within the State without complying with the acts as to registration of its charter, though it was a party to two or three isolated transactions had in the State.

In Holzer *v.* Dodge, 233 N. Y. 216 (135 N. E. 268), it was held that a corporation manufacturing automobiles outside the State and selling them in the State through dealers who purchased the cars from the manufacturer and who were not merely sales agents, which corporation was represented in the State only by export agents and by district representatives, whose duties were merely to look after the interests of the defendant, but who were not authorized to enter into any contracts in its behalf and whose business was maintained in their own name and not by the corporation, was not engaged in business within the State so as to be liable to service of process therein.    The relation between the defendant and the Marmon-Atlanta Company was not that of principal and agent, but that of seller and purchaser.    *Burkhalter* v. *Ford Motor Co.,* 29 *Ga. App.* 592 (116 S. E. 333).

Applying the above principles, we do not think that the defendant was so doing business in Georgia as to subject it to the processes of the courts of this State.    It was a foreign corporation chartered under the laws of the State of Indiana, with its principal office and place of business in the City of Indianapolis.    Under its charter it was authorized, among other things, to manufacture and sell automobiles.    Under the contract between the defendant and the Marmon-Atlanta Company, the latter being a Georgia corpora-

tion, the former sold to the latter its automobiles to be by it in turn resold to retail purchasers. These automobiles were shipped on closed bills of lading, with drafts attached, with "order notify" directions to the Marmon-Atlanta Company. The drafts and bills of lading were sent to an Atlanta bank, when the drafts were taken up and the bills of lading surrendered to the Marmon-Atlanta Company, to which the title to the cars passed at that time. The defendant does not sell any of its cars in Georgia, except to distributors and dealers, who buy them under the plan above set forth. The duties and powers of Haskell, the agent of the defendant upon whom service was sought to be perfected in this case, are fully set out in the statement of facts. It will be seen that the defendant has a district representative in territory embracing this State. He does not sell any cars for the defendant. He visits distributors and dealers from time to time within this territory. He assists them in every way possible in selling their cars purchased from the defendant. He demonstrates to prospective buyers, from such distributors or dealers, their Marmon cars. He instructs such distributors and dealers in the art of salesmanship of Marmon cars. He will sell such cars belonging to distributors or dealers, but turns over the orders therefor to such distributors or dealers. He keeps up with the business done by distributors and dealers, and makes reports thereof to the defendant at its home office. He sees that dealers and distributors render proper service to the users of Marmon cars purchased from them, in order that such users may be satisfied with their cars. He selects the dealers and the distributors, and executes, for the defendant, tentative contracts with them, subject to be countersigned by its executive officer, and approved by the company at its home office. It will be seen that the business done by the defendant through its agent does not consist in selling their cars, but is incident merely to the sale of their cars to the distributors or dealers. The effect of the services of the agent may be, and doubtless is, to expand and swell the business of these distributors and agents, and thus indirectly the business of the defendant. He boosts the sales of dealers and distributors, so that the company can sell to them more of its cars. While this is so, it is a mere incident to the business the defendant is doing. Being such, it does not constitute doing business in this State so as to subject the defendant corporation to process served on such

agent in this State; and we are of the opinion that the trial judge did right in sustaining the plea of the defendant to the jurisdiction of the court. If there is anything in Eastman Kodak Co. *v.* Southern Photo Material Co., 295 Fed. 98, to the contrary of what is held above, we think that the authorities on which we base our ruling express the sounder law. See *Taylor* v. *Friedman Co.,* 152 *Ga.* 529 (110 S. E. 679).

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., dissenting.*