## ZIMMERS et al. v. DODGE BROTHERS, Inc.

District Court, N. D. Illinois, E. D. June 22, 1927.

### No. 6458.

1. **Patents** ⊕═288(3)—What constitutes "doing business" within district, giving court jurisdiction of patent infringement suit, depends on particular facts (Judicial Code, § 48 [Comp. St. § 1030]).

What constitutes "doing business" within the district, within Judicial Code, § 48 (Comp. St. § 1030), relating to jurisdiction and service of process in suits for infringement of patents, depends on facts of the particular case, in view of section 24 (Comp. St. § 991), Anti-Trust Act, § 7 (Comp. St. § 8829), and Clayton Act, § 12 (Comp. St. § 8835k).

2. **Corporations** ⊕═668(15)—Not every business activity in district justifies conclusion foreign corporation is "doing business" there for process purposes (Judicial Code §§ 24, 48 [Comp. St. §§ 991, 1030]; Anti-Trust Act, § 7 [Comp. St. § 8829]; Clayton Act, § 12 [Comp. St. § 8835k]).

Not every business activity of a corporation in a district other than that of its residence will justify the conclusion that it is "doing business" there, so as to make it amenable to process there, under Judicial Code, §§ 24, 48 (Comp. St. §§ 991, 1030), Anti-Trust Act, § 7 (Comp. St. § 8829), or Clayton Act, § 12 (Comp. St. § 8835k).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

3. **Patents** ⊕═288(3)—Statute giving District Courts jurisdiction of patent infringement suits is restrictive, and must be considered in light of decisions defining "doing business" (Judicial Code, § 48 [Comp. St. § 1030]).

Judicial Code, § 48 (Comp. St. § 1030), giving federal District Courts in district of which defendant is an inhabitant, or in any district in which defendant has committed acts of infringement and has a regular and established place of business, jurisdiction of patent infringement suits, is restrictive, and must be considered in the light of decisions relating to what constitutes "doing business" by a foreign corporation in the district of suit, so as to subject it to process in that district.

**4. Patents ⟜312(1)—Burden is on complainant in patent infringement suit to show that defendant foreign corporation is doing business within district (Judicial Code, § 48 [Comp. St. § 1030]).**

Under Judicial Code, § 48 (Comp. St. § 1030), burden is on complainant in patent infringement suit to show jurisdictional facts by proof that defendant foreign corporation is "doing business" within the district.

**5. Patents ⟜288(3)—Foreign automobile corporation, having representative in district without authority to contract, held not "doing business" within district, so as to be liable to process there (Judicial Code, § 48 [Comp. St. § 1030]).**

A foreign corporation, manufacturing automobiles outside the district and selling them within the district through dealers, who purchased automobiles from it and who were not merely sales agents, which corporation was represented in the district by a district representative, whose duties were merely to look after the interests of the corporation, and who was not authorized to make contracts on behalf of corporation, and was reimbursed for his expenditures and received salary checks from home office of corporation, took lease for office space and bank account in own name, and whose letter heads did not represent him to be agent of corporation, *held* not "doing business" within the district, so as to be amenable to service of process there, under Judicial Code, § 48 (Comp. St. § 1030), notwithstanding telephone book designated representative as district manager.

**6. Patents ⟜288(3)—In case of doubt whether federal District Court has jurisdiction of patent infringement suit, it is better that parties be remitted to the district where there is no doubt respecting jurisdiction (Judicial Code, § 48 [Comp. St. § 1030]).**

Where it is doubtful whether foreign corporation is doing business within the district, so as to give federal District Court jurisdiction of patent infringement suit against it under Judicial Code, § 48 (Comp. St. § 1030), it is better that parties be remitted to the district where there is no doubt as to jurisdiction before expensive and protracted litigation has been had.

**7. Appeal and error ⟜78(2)—Order quashing service of summons in patent infringement suit for lack of jurisdiction is "final and appealable" (Judicial Code, § 48 [Comp. St. § 1030]).**

Order quashing service of summons in patent infringement suit against a foreign corporation, on ground that defendant is not doing business within the district and that jurisdiction has not been acquired, under Judicial Code, § 48 (Comp. St. § 1030), is a "final and appealable order."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Order.]

In Equity. Patent infringement suit by Joseph B. Zimmers and another against Dodge Brothers, Inc. On defendant's motion to quash and set aside the return of service of summons and to dismiss the bill for want of jurisdiction, motion granted to extent indicated in opinion.

Winfield S. Williams, of Chicago, Ill., for complainants.

Rosenthal, Hamill & Wormser, of Chicago, Ill. (Leo F. Wormser, of Chicago, Ill., of counsel), for defendant.

WILKERSON, District Judge. This is a suit for infringement of patent. Defendant, appearing specially, moves to quash and set aside the return of service of summons, and to dismiss the bill for want of jurisdiction, on the grounds (1) that defendant is not doing business in Illinois; and (2) that jurisdiction is not acquired under section 48 of the Judicial Code (Comp. St. § 1030).

It appears from the affidavits filed in support of the motion that defendant is a Maryland corporation and is not licensed to do business in Illinois. It is organized for, and does the business of, manufacturing, selling, and dealing in automobiles and automobile parts and accessories. Its principal office is Baltimore, Md. Its factories and principal place of business are located at Hamtramck, Mich., near Detroit, and that is the distributing center for the company's products. It does not have sales agents throughout the country, but sells to independent dealers, who in turn sell to associate dealers or other dealers, or directly to the ultimate purchasers or users. The relation between the company and the dealers is that of vendor and vendee. Dealers are appointed under a written "dealer's agreement," which becomes effective only upon execution by the company at Hamtramck after execution by the dealer. Dodge Brothers, Inc., grants to the dealer the right to purchase Dodge Brothers motor vehicles and parts for resale in a designated territory, but the manufacturer is not bound to deliver any specified quantity. The manufacturer delivers the motor vehicles and parts to the dealer, by delivering them to a common carrier at Hamtramck, Mich., and thereafter the dealer assumes all the risk of loss and damage. The dealer pays for the motor vehicles and parts purchased, either in cash at the defendant's factory or on presentation of sight draft against bill of lading. Each dealer, at his own expense, maintains salesrooms for the purposes of exhibiting and selling the motor vehicles and parts.

The defendant has in its employ 25 district representatives, located in 25 of the principal cities of the United States. One of the district representatives is located in Chicago and has an office here. His duties are to

look after the interests of the defendant in the Chicago district and to make reports to the defendant from time to time; to investigate and interview men available as dealers and submit recommendations to the officials of the defendant corporation for final approval; to observe if subdealers get an adequate supply of cars from dealers; to assist in settling disputes between dealers; to help the dealers with their sales' and service problems; to stimulate sales contests among dealers; to advise the dealers in regard to their used car problems; to inform the dealers about methods of organizing; to talk to salesmen about problems of salesmanship; and to keep the defendant fully informed of conditions prevalent and events happening with respect to the industry in his district.

He takes no active part in the sale of motor vehicles or parts; he has no authority to make contracts on behalf of the defendant corporation, nor has he done so; he maintains his office and makes all contracts, relating to the upkeep of his office, on his own behalf, and is reimbursed for his expenditures weekly by checks from Detroit, Mich.; his salary check is sent to him bimonthly from Detroit, Mich.; he takes the lease for office space in his own name; he keeps his bank account in his own name, without reference to his position as district representative; and his letter heads do not represent him to be an agent of Dodge Brothers, Inc.

The district representative has no authority to commit the defendant finally in any way. He has a secretary, whose salary is paid by the company's check from Hamtramck. Persons inquiring at the office in Chicago with reference to service or purchase or exchange of Dodge Brothers automobiles are referred to the Dodge dealer in Chicago. This secretary compiles information from dealers and transmits such information to the company at Hamtramck.

The principal dealer in Chicago is a Delaware corporation licensed to transact business in Illinois and having its principal place of business in Chicago. It is one of the largest dealers in Dodge Brothers automobiles in the United States. It is an independent corporation in no way affiliated with Dodge Brothers, Inc., except as one of the Dodge automobile dealers. A sale has never been made by or through the district representative to this dealer. The district representative has never undertaken to contract for or in any way bind Dodge Brothers, Inc., in any transaction with this dealer.

In opposition to defendant's motion, plaintiffs filed affidavits based for the most part on general knowledge, reputation, and information and belief, that Dodge Brothers, Inc., did a large business within this district; that the district representative was in fact district manager, and spoke finally and authoritatively for defendant; but plaintiffs offered no evidence to prove that defendant had consummated a single business transaction in this district, or that the district representative had in any single instance ever spoken finally or authoritatively. The affidavits also set forth that the furnishings of the office had been there for some time, although the particular person in charge had been changed from time to time by defendant. Plaintiffs showed by the Chicago Telephone Directory that the office telephone number was listed under the heading "Dodge Brothers motor vehicles dist. mgr.," and made affidavit that shortly before the suit was commenced the directory of the building in which the office was located had the name of Dodge Brothers thereon as being in said office; that on the door of the office were the words, "C. A. Lemmon District Manager Dodge Brothers Motor Vehicles," and that, after the commencement of the suit, the words "District Manager" were changed to "Representing." This, however, was contradicted by the affidavits filed on behalf of defendant, which averred that the words on the door had not been changed. There was also an affidavit to the effect that a telephone call to said office brought affirmative answers to the questions whether that was the office of Dodge Brothers and whether that was the district manager's office. Defendant's affidavits set forth that as a matter of office practice such answers were not made, but that in answering the telephone the telephone number merely was given and that the office was called Mr. Lemmon's office.

Plaintiffs contend that the presence of the district representative in Chicago and the maintenance of the office, under the circumstances stated above, made defendant amenable to process here.

Patent infringement suits are brought under section 48 of the Judicial Code:

"In suits brought for the infringement of letters patent the District Courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of

business, service of process, summons, or subpœna upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought."

This statute requires infringement in this district, "conducting business," and "a regular and established place of business." As will hereinafter be shown, a corporation may conduct business without having an office in the district, and may have an office without conducting business.

[1] What is meant by "conducting business" in this district and "regular and established place of business"? No exact rule has been laid down by the courts as to what constitutes "doing business," but each case depends upon its own circumstances. The same question has arisen under other provisions of law.

Under section 24 of the Judicial Code (Comp. St. § 991), providing for suits based on diversity of citizenship, a foreign corporation is a citizen of the state creating it, but may be served with process in another jurisdiction if and when it is actually "doing business" there. Goldey v. Morning News, 156 U. S. 518, 521, 522, 15 S. Ct. 559, 39 L. Ed. 517; Riverside Mills v. Menefee, 237 U. S. 189, 194, 195, 35 S. Ct. 579, 59 L. Ed. 910.

Under section 7 of the Anti-Trust Act (Comp. St. § 8829), authorizing suit "in the district in which the defendant resides or is *found,*" the Supreme Court held that it was required, as under section 24 of the Judicial Code, in order to sustain service of process in a jurisdiction other than that of the corporation's organization, that the corporation should actually be "doing business" there. People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 84, 86, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Eastman Kodak Co. v. Southern Photo Materials Co., 47 S. Ct. 400, 71 L. Ed. —— (decided February 21, 1927).

By the Clayton Act, as to suits arising under that act, the jurisdiction of the District Court was enlarged. By section 12 of that act it was provided that action against a corporation might be "not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found *or transacts business,* and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." Comp. St. § 8835k. As the word "found" in previous acts had already been construed to require an actual "doing of business," the Supreme Court decided that the addition of the words "or transacts business" indicated an intent on the part of Congress, in the particular class

of litigation arising under the Clayton Act, to permit suit to be brought and process to be served against a corporation in a district other than its residence on a degree or amount of transaction of business which would fall short of "doing business" within previous statutes. Eastman Kodak Co. v. Southern Photo Materials Co., supra. The Supreme Court said as to said section 12 of the Clayton Act:

"And we think it clear that, as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, its necessary effect was to enlarge the local jurisdiction of the District Courts, so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'—although neither residing nor 'found' therein—in which case the process may be issued to and served in a district in which the corporation either resides or is 'found'; and further that a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit, *although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process,* if, in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character. * * * And see Green v. Chicago, B. & Q. Ry., 205 U. S. 530, 533, 27 S. Ct. 595, 51 L. Ed. 916, in which it was recognized that a corporation engaged in the solicitation of orders in a district was in fact 'doing business' therein, although not in such sense that process could be there served upon it."

The court further held that sufficient transaction of business in the district of suit was shown, under the Clayton Act, even though "such business may be entirely interstate in character and be transacted by agents who do not reside within the district," it being shown that the defendant "in a continuous course of business, was engaged, not only in selling and shipping its goods to dealers within the Georgia district, but also in soliciting orders therein through its salesmen and promoting the demand for its goods through its demonstrators for the purpose of increasing its sales. * * *"

[2] It is thus apparent that it is not any business activity of a corporation in a district other than that of its residence which will justify the conclusion that it is "doing business" there, so as to make it amenable to process there. Green v. C., B. & Q. R. Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916; Tyler Co. v. Ludlow-Saylor Wire Co., 236 U. S. 723, 35

S. Ct. 458, 59 L. Ed. 808; Philadelphia & Reading Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710; Toledo Railways Co. v. Hill, 244 U. S. 49, 53, 37 S. Ct. 591, 61 L. Ed. 982; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Bank of America v. Whitney Cent. Nat. Bank, 261 U. S. 171, 173, 43 S. Ct. 311, 67 L. Ed. 594; Davis v. Farmers' Co-operative Equity Co., 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996; Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634; American Elec. W. Co. v. Lalance & Grosjean Mfg. Co. (D. C.) 256 F. 34; Hilton v. N. W. Expanded Metal Co. (D. C.) 16 F. (2d) 821; Fowble v. C. & O. R. Co. (D. C.) 16 F.(2d) 504; Holzer v. Dodge Bros., 233 N. Y. 216, 135 N. E. 268; Southeastern Distributing Co. v. Nordyke & Marmon Co., 159 Ga. 150, 125 S. E. 171.

[3] The Clayton Act, passed in 1914, as above shown, has enlarged the jurisdiction of District Courts against foreign corporations, but only in the cases arising under that act. On the other hand, section 48 of the Judicial Code, originally passed in 1897, is restrictive. Bowers et al. v. Atlantic G. & P. Co., et al. (C. C.) 104 F. 887; United Shoe Machinery Co. v. Duplessis Independent Shoe Machinery Co. (C. C.) 133 F. 930. Section 48 must therefore be considered in the light of the many decisions with reference to what constitutes "doing business" by a foreign corporation in the district of suit, so as to subject it to process in that district. See American Elec. W. Co. v. Lalance & Grosjean Mfg. Co., supra.

As already pointed out, it is not any business activity which will constitute the necessary "doing business." Reference to adjudicated cases shows that quite generally it has been held that "doing business" is not shown by the mere solicitation of orders through an employee, even though from an office employing in addition several clerks and agents, where a corporation has no property in the state other than the office itself, and where the corporation in the foreign district passes there upon whether the orders shall be accepted or not, and, if it does accept, deals directly with the customer; all transactions being completed out of the state where the orders are solicited, and where the agent does not have authority to bind the corporation. Green v. C. B. & Q. R. Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537. This is, of course, carrying on business of a certain kind and extent, but it is not the carrying on of business by the corporation in the foreign state "in such a manner, and to such an extent, as to warrant the inference that it is present there." Green v. C., B. & Q. R. Co., supra; Philadelphia & Reading R. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710; St. L. & S. W. R. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; Tyler Co. v. Ludlow-Saylor Wire Co., 236 U. S. 723, 35 S. Ct. 458, 59 L. Ed. 808; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Bank of America v. Whitney Cent. Nat. Bank, 261 U. S. 171, 173, 43 S. Ct. 311, 67 L. Ed. 594; Davis v. Farmers' Co-operative Equity Co., 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996; Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634.

Operations through a corporate subsidiary have been held not "doing business." Cannon Manufacturing Co. v. Cudahy Packing Co., supra. Maintenance of an office in the district of suit does not necessarily constitute "doing business"; nor, on the other hand, does failure to maintain such office mean that the corporation is not "doing business" in the district of suit. Green v. C., B. & Q. R. Co., supra; International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479; Tyler Co. v. Ludlow-Saylor Wire Co., supra; Toledo Railways Co. v. Hill, supra; Case v. Smith, Lineaweaver & Co. (C. C.) 152 F. 730; Hilton v. N. W. Expanded Metal Co., supra; Fowble v. C. & O. R. Co., supra. Listing of the corporation's name in the telephone directory, or having its name on the door of an office, does not necessarily constitute "doing business." Philadelphia & Reading R. Co. v. McKibbin, supra; Green v. C., B. & Q. R. Co., supra; Fowble v. C. & O. R. Co., supra; Hilton v. N. W. Expanded Metal Co., supra.

The corporation must be engaged in carrying on in a continuous manner a substantial part of its ordinary business, to carry on which it was chartered. Hilton v. N. W. Expanded Metal Co., supra; Fowble v. C. & O. R. Co., supra; Duke v. Pioneer Mining & Ditch Co. (D. C.) 280 F. 883; Toledo R. Co. v. Hill, supra. It is the manner, extent and character of the activities of the corporation in the district of suit which is determinative. See Riverside Mills v. Menefee, 237 U. S. 189, 194, 195, 35 S. Ct. 579, 59 L. Ed. 910. Merely incidental and collateral activities will not suffice. Green v. C., B. & Q. R. Co., supra; Holzer v. Dodge Bros., supra; Toledo R. Co.

v. Hill, supra; Duke v. Pioneer Mining & Ditch Co., supra; American Elec. W. Co. v. Lalance & Grosjean Mfg. Co., supra; Southeastern Distributing Co. v. Nordyke & Marmon Co., 159 Ga. 150, 125 S. E. 171. Advertising, good will operations, maintenance of an office, listing its name in the telephone directory, or having its name on a door, while material, do not necessarily constitute "doing business." Cases supra.

It is to be noted that, if the district representative in the case at bar should be removed from this district, the established business of the defendant would not be appreciably or substantially affected. The district representative does not engage in transactions directly raising legal obligations. See Rich v. Chicago, etc., R. Co., 34 Wash. 14, 74 P. 1008.

In the cases stress has been laid upon the nature of the activities of the corporation in the district of suit. In several cases where, in addition to solicitation, there was collection of payment by the solicitor (International Harvester v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479, and even in this case the court said, page 585 [34 S. Ct. 946], "Upon this question the case is a close one;" People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537), or adjustment of financial matters, or the adjustment of claims, it was held that the corporation was "doing business" (St. L. S. W. R. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 611, 619, 19 S. Ct. 308, 43 L. Ed. 569; Davis v. Motive Parts Corporation [D. C.] 16 F.[2d] 148). In Chadeloid Chemical Co. v. Chicago Wood Finishing Co. (C. C.) 180 F. 770, in addition to solicitation, there was use of the office as a place of distribution and as a place from which slow debtors were pressed for payment, and there were also representation and recognition by the corporation that the place was its office. In Frey & Son, Inc., v. Cudahy Packing Co. (D. C.) 228 F. 209, a case arising under the Clayton Act, there was present the element of keeping stocks of goods and advertising matter on hand for delivery as well as solicitation in the state.

In certain cases, in matters of contract, such as insurance, it was held, on account of the nature of the insurance contract contemplating performance in the district, that the insured, the person directly contracted with, had the right to sue in his own state, the company having entered the state, solicited the insurance, collected money from the citizen, and adjusted claims in the state; it being said "that some fair and reasonable means should exist for bringing such corporations within the jurisdiction of the courts of the state where the business was done, out of which the dispute arises" (Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 611, 619, 19 S. Ct. 308, 315, 43 L. Ed. 569; Pennsylvania Lumbermen's Mutual Fire Ins. Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810; Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 29 S. Ct. 445, 53 L. Ed. 782); or, as stated in Frey & Son, Inc., v. Cudahy Packing Co., supra, "whether a nonresident corporation is doing business specially, so as to subject it to suit at the instance of a particular defendant, may depend in part upon the relation of the things it is doing to the cause of action asserted" (Mutual Life Ins. Co. v. Spratley, supra).

Situations very similar to the one in the case at bar have been held not to constitute "doing business" in the district of suit. Southeastern Distributing Co. v. Nordyke & Marmon, 159 Ga. 150, 125 S. E. 171; Holzer v. Dodge Bros., 233 N. Y. 216, 135 N. E. 268; Fawkes v. American Motor Car Sales Co. (C. C.) 176 F. 1010. See, also, Hilton v. N. W. Expanded Metal Co. (D. C.) 16 F.(2d) 821.

In Southeastern Distributing Co. v. Nordyke & Marmon Co., supra, the Supreme Court of Georgia had before it a case involving an attempt to subject to the jurisdiction of the courts of Georgia a corporation of Indiana. There was involved a method of operation with a district representative with duties almost identical with the case at bar. After reviewing the facts, the court said:

"Applying the above principles, we do not think that the defendant was so doing business in Georgia as to subject it to the processes of the courts of this state. It was a foreign corporation chartered under the laws of the state of Indiana, with its principal office and place of business in the city of Indianapolis. Under its charter it was authorized, among other things, to manufacture and sell automobiles. Under the contract between the defendant and the Marmon-Atlanta Company, the latter being a Georgia corporation, the former sold to the latter its automobiles, to be by it in turn resold to retail purchasers. These automobiles were shipped on closed bills of lading, with drafts attached, with 'order notifying' directions to the Marmon-Atlanta Company. The drafts and bills of lading were sent to an Atlanta bank, when the drafts were taken up and the bills of lading surrendered to the Marmon-Atlanta Company, to which the title to the cars passed at that

time. The defendant does not sell any of its cars in Georgia, except to distributors and dealers, who buy them under the plan above set forth. The duties and powers of Haskell, the agent of the defendant upon whom service was sought to be perfected in this case, are fully set out in the statement of facts. It will be seen that the defendant has a district representative in territory embracing this state. He does not sell any cars for the defendant. He visits distributors and dealers from time to time within this territory. He assists them in every way possible in selling their cars purchased from the defendant. He demonstrates to prospective buyers from such distributors or dealers their Marmon cars. He instructs such distributors and dealers in the act of salesmanship of Marmon cars. He will sell such cars belonging to distributors or dealers, but turns over the orders therefor to such distributors or dealers. He keeps up with the business done by distributors and dealers, and makes reports thereof to the defendant at its home office. He sees that dealers and distributors render proper service to the users of Marmon cars purchased from them, in order that such users may be satisfied with their cars. He selects the dealers and the distributors, and executes, for the defendant, tentative contracts with them, subject to be countersigned by its executive officer, and approved by the company at its home office. It will be seen that the business done by the defendant through its agent does not consist in selling their cars, but is incident merely to the sale of their cars to the distributors or dealers. The effect of the services of the agent may be, and doubtless is, to expand and swell the business of these distributors and agents, and thus indirectly the business of the defendant. He boosts the sales of dealers and distributors, so that the company can sell to them more of its cars. While this is so, it is a mere incident to the business the defendant is doing. Being such, it does not constitute doing business in this state so as to subject the defendant corporation to process served on such agent in this state, and we are of the opinion that the trial judge did right in sustaining the plea of the defendant to the jurisdiction of the court."

[4, 5] As above stated, no general rule has been laid down and each case must depend on its own facts and circumstances. The policy of the law is that a defendant may be sued only in the district in which he is an inhabitant or in which he is "found," which in the case of a corporation means that it shall be fairly clearly shown that it is "doing business" in the district in the meaning which is given to that expression by the decisions. Under section 48 this jurisdictional requirement is expressly stated and the burden is on the complaining party to show the jurisdictional facts. The facts hereinabove stated show, in the opinion of the court, an incidental activity of the corporation, not a substantial part of its ordinary business, and relating rather to the internal affairs of the corporation in its relations with dealers, and having more the character of solicitation, advertising and good will operations. It is the opinion of the court that defendant has not been shown to be subject to service in this district.

[6] The most that can be said to support the jurisdiction under the facts in this case is that it is extremely doubtful. In this situation, it is better that the parties be remitted to the district where there is no doubt as to the jurisdiction, before, rather than after, expensive and protracted litigation has been had. American Elec. W. Co. v. Lalance & Grosjean Mfg. Co. (D. C.) 256 F. 34, 37; General Elec. Co. v. Best Elec. Co. (D. C.) 220 F. 347; Philadelphia & Reading R. Co. v. McKibbin, supra.

[7] The order, therefore, will be that service of summons be quashed. The court can dismiss the case entirely, but will not do so at the present time, leaving it open to the complainant to obtain service, if possible to do so within a reasonable time. The order quashing the service is a final and appealable order. Rosenberg Co. v. Curtis Brown Co., 260 U. S. 516, 43 S. Ct. 170, 67 L. Ed. 372.