## SUMMERFIELD v. PHOENIX ASSUR. CO.

(Circuit Court, W. D. Virginia. December 21, 1894.)

1. FIRE INSURANCE—PROOFS OF LOSS—BUILDER'S CERTIFICATE.

A policy of fire insurance contained a clause requiring the insured, within 30 days after a fire, to furnish preliminary proofs of loss, containing certain information about the risk, and another clause requiring, if the claim of loss was for a building, that the insured should procure and attach to the preliminary proofs of loss a duly verified certificate of a builder as to the actual cash value of the building immediately before the fire. *Held*, that this requirement was sufficiently complied with by the insured procuring from a responsible firm of builders an itemized estimate of the cost of rebuilding the burned building, signed by them as

architects and builders, but not sworn to, and attached to the preliminary proofs of loss more than 30 days after the fire.

**2. SAME—WORKING OF CARPENTERS.**

The policy also contained a clause that the working of carpenters in building, altering or repairing the premises, would vitiate the policy. *Held,* that the policy was not avoided, under this clause, by the fact that, on the day before the fire, a carpenter, under instructions to make certain alterations, had gone upon the premises and removed two small pieces of stair rail, no actual connection appearing between the fire and the carpenter's presence or work.

This was an action by Rebecca Summerfield against the Phoenix Assurance Company upon a policy of insurance. The case was, by agreement, heard by the court without a jury.

On the 23d day of February, 1893, the plaintiff took out a policy of fire insurance from the defendant upon a large building in the city of Danville, composed, in the principal story, of 'three storerooms entered severally from the street, and of three upper stories and an attic, containing numerous rooms arranged for the purposes of a hotel. Two of the storerooms on the principal floor, on a level with the pavement, were occupied for mercantile purposes. All the upper stories of the building were used as a hotel, and so, also, was the third storeroom below, which was used as a hall, office, and entrance room to the hotel above, from which a staircase ascended to the upper stories. The building insured was leased, at the time of the issuance of this policy, to three different tenants, the hotel to one tenant, and the two storerooms to as many other tenants; but the policy was single and entire, covering the building as a whole. The amount for which the policy which is the subject of this suit was issued was $3,000. Other risks were taken out by the plaintiff on this building to the amount of $19,500, the total insurance being $22,500. The proofs show that the value of the whole building insured much exceeded the total amount of the policies upon it, the estimates of different witnesses varying from $30,000 to $50,000. The insurance policy on which this suit is brought was for the year ending on the 23d February, 1894. Soon after this policy was taken out the lessee of the hotel gave up the lease, and vacated the parts of the building which he had occupied, but the two storerooms remained in the occupancy of their respective lessees. On the hotel keeper moving out, the plaintiff employed a carpenter to remove the staircase from the office room below, which has been mentioned, intending in the future to lease that room separately. Nothing was actually done towards removing the staircase, except that a workman took off one or two joints of the hand railing. The hotel apartments being then vacant, the carpenter was intrusted with the key of the lower room, in which the staircase was. There seems from the evidence to have been another entrance to the hotel apartments, of the key to which this carpenter had not the custody. A few nights after the lessee of the hotel had vacated the building, and on the night after the pieces of hand railing had been taken off the staircase,—that is to say, on the night of the 7th March, 1893,—a disastrous fire broke out in the upper part of the hotel, and completely destroyed the entire building; the loss being total, one witness stating that the value of all the débris was not as much as $1,000. After the fire the usual steps were taken, prescribed for such an event by the policy, looking to an adjustment and payment of the loss. These proved to be unsatisfactory to the insurance company, who finally denied all liability for the loss, and this suit is brought to enforce payment.

Among the provisions of the policy were the following, which I shall recite and number:

(1) One clause provides as follows: "Persons sustaining loss by fire shall forthwith give notice of said loss to the company, and shall within thirty days render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving copies of the written portions of all policies thereon; also the actual cash value of the property, and their interest therein; for what pur-

pose and by whom the building insured, or containing the property insured, and the several parts thereof, were used at the time of the loss; when and how the fire originated; and shall also produce a certificate, under the hand and seal of a notary public, * * * stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured to the amount which such magistrate or notary shall certify." It was not contended at the trial that there had been a failure to comply with this provision of the policy, except in a matter claimed by the defense to have been incidental to this 30-days requirement, under a clause of the policy following the one just given.

(2) That clause was, in part, as follows: "As a part of the preliminary proofs of loss, the assured shall, if the claim be for building destroyed by fire, procure the duly-verified certificate of some reliable and responsible builder as to the actual cash value of it immediately before said fire, which shall be attached to and form a part of such proofs, and, if required so to do, shall furnish the company with plans and specifications of the building destroyed, which shall be duly verified by the oath of the assured."

(3) Another clause of the policy provided that the cash value of the property insured shall not be estimated at a greater amount than the cost of replacing it anew, reduced by a fair allowance for depreciation from the use it had sustained.

(4) The policy also contained a clause under the caption of "Builder's Risk," providing that "the working of carpenters * * * in building, altering, or repairing the premises will vitiate this policy," unless permission be indorsed in writing, etc.

(5) Still another clause of the policy declared that "if the premises shall be occupied or used so as to increase the risk, or become vacant or unoccupied, and so remain, without notice to and consent of this company in writing, or the risk be increased * * * by any means whatever within the control of the assured, without the assent of the company indorsed hereon, then * * * this policy shall be void."

Notice of the fire was promptly given to the agent of the defendant company in Danville, and preliminary proofs of loss were furnished on the 28th of March, the fire having occurred on the 7th of that month. Objection was made on 26th April by the defendant that a builder's certificate of the cash value of the premises at the time of the fire had not been included in the proofs, as required by the policy. Thereupon a paper which the plaintiff claims to have been such a one as the policy required was furnished on the same day on which the objection was received. This paper was an estimate in detail made by a builder of the cost of rebuilding the premises, omitting any deduction for deterioration from the use which the building had undergone. It purported to be an estimate, it was signed by the builder, and was not sworn to by him or by the assured. This paper was afterwards, to wit, on the 12th of June, coupled with and made a part of the supplemental proofs of loss furnished by the plaintiff, and was sworn to by the plaintiff herself on the 13th of June. It is marked "Exhibit 1, Graham," in the record. The language of the caption is: "Estimate of Cost to Rebuild the Summerfield Building on Present Foundation as Before the Fire"; and at the bottom are the following inscriptions: "April 24th, 1893. Graham Bros., Architects & Builders, Danville, Va."

Peatross & Harris and Green & Miller, for plaintiff.

Berkeley & Harrison, Withers & Withers, and Staples & Munford, for defendant.

HUGHES, District Judge (after stating the facts). This is a case of total loss. The property burned was completely destroyed. It had been insured for a total sum of $22,500, and it was worth, at minimum valuation, $30,000. In such a case, and in the absence of any charge of perjury, fraud, or incendiarism, the policy itself would

seem to liquidate the amount of loss to be recovered, and to render unnecessary such formal and technical proofs of loss as the policy prescribes, with reference necessarily to cases of partial loss. Policies of the character of the one now under consideration contain numerous important and valuable stipulations, all applicable to cases of partial loss, all binding upon and enforceable between the parties to them, but, so far as they are intended to ascertain the amount of loss, useless and immaterial in cases of total loss. In this latter class of cases to require the observance of such formalities would seem to be unreasonable, and in contravention of the maxim, "Lex neminem cogit ad vana seu inutilia peragenda" ("The law compels no one to do useless things"). In cases of total loss, where the value destroyed exceeds indisputably the amount of insurance, the policy liquidates the amount, res ipsa loquitur, and dispenses in general with affirmative and formal proofs of loss. But in the present case we have a written contract, and that document requires formal proofs from all persons sustaining losses of every character under it. That contract is binding upon the insured, and she must comply with its stipulations, however technical and perfunctory they may be. The pleadings show that the defendant company refused payment of the loss in this case on five several grounds. At the trial, and in the briefs, however, only two of these grounds were relied on, and it is only these two that need to be examined in this opinion. One of them relates exclusively to the proofs of loss. This ground of defense is that a duly-verified builder's certificate of the cash value of the burned premises just before the fire was not furnished, in compliance with the requirements of the policy. The other ground of defense is that the builder's risk clause of the policy was violated when a workman took off two pieces of hand railing from the staircase in the lower room of the hotel on the afternoon before the night of the fire, and was intrusted with the key of that room. This objection is urged in connection with the clause of the policy described in paragraph numbered 5 in the above statement of the facts, relating to an increase of risk. These two objections will be examined severally. In respect to both objections the case turns wholly on facts; it presents no disputable question of law.

As to the builder's certificate of loss: The question presented is whether the "estimate" of Graham & Bro., dated on the 24th April, and signed by them professionally, giving an itemized account of what the cost of rebuilding anew would be, and furnished the defendant on April 26th, fulfilled the requirements of the policy as set out in the paragraph numbered 2 in the above statement of facts. The defendant contends that this paper was not such a certificate as the policy required, and that it was not furnished in time; that is to say, was not furnished within 30 days after the fire. The policy, in the clause set out in the paragraph numbered 3 of the above statement of facts, indicates that the cash value of the premises before the fire may be established by estimating the cost of rebuilding anew, and deducting from the estimate the probable deterioration suffered by the premises from previous use. Such a paper, suggested

probably by this provision of the policy, prepared by Graham & Bro. as architects and builders, and signed by them professionally, was furnished by the plaintiff on the 26th of April, and was then made a part of her preliminary proofs of loss. The relation of that paper to the present litigation is this: It was furnished by the plaintiff as her statement of the amount of her loss, and it was verified by the signature of Graham & Bro. as builders, and upon their professional responsibility and reputation. I do not think the phrase "duly verified," as used in the policy, necessarily requires an attestation by affidavit. In the clause next preceding that in which this certificate is required, papers there mentioned are required to be sworn to, but an express requirement is omitted in regard to this paper. It is true that the term "verify" applied to legal papers generally means, or implies, an oath; but it is equally true that it does not always, or necessarily, do so. Affidavits are usually made to facts, not to opinions; to actual expenditures, not to estimates of them. It would have been anomalous for this policy to have required affidavit to a certificate merely conjectural on its face. In the case at bar I think that when the plaintiff furnished an estimate of the cost of rebuilding her premises anew, verified by the names of Graham & Bro., and signed as builders, in their professional character, the paper conformed, as to its verification, to the requirements of the policy, and was a "duly-verified certificate." As to whether this paper ought not to have contained an item estimating the deterioration of the building from the use it had undergone before the fire: There is no requirement of such an item in the policy, and the deterioration seems to me to be too intangible a thing to admit of any but the most vague and conjectural valuation. It is not such a matter as a builder can consider as an expert, nor a proper subject for professional estimate. It belongs to that class of subjects which can best be dealt with by negotiation between fair-minded parties in interest. I think the builders acted properly in leaving the vague and intangible item of deterioration, which did not fall within their duties as experts, to negotiation between the parties to the contract of insurance.

It is further objected that, even if this were a valid paper, it was not furnished and made part of the preliminary proofs within 30 days after the fire. The policy requires that the preliminary proofs shall be furnished within 30 days, and it also requires that the builder's certificate of the cash value of the premises burned shall be attached to and made a part of the preliminary proofs, but it significantly omits to require that such attaching and making part shall be done within 30 days. The 30-days requirement is in one clause of the policy, and embraces a category of things that are directed to be done within 30 days. The builder's certificate of cash valuation is in another clause, containing no 30-day requirement, and is put into a category of things which are expressly not required to be done, and some of which could not be conveniently done, within 30 days. All the rules of construction forbid that, in such a case, an inference and implication should be raised for the purpose of work-

ing a forfeiture. On the subject of this builder's certificate, I hold that the estimate of Graham & Bro. was such a certificate as satisfied the requirement of the policy; that it was duly verified; and that, having been furnished and made part of the preliminary proofs on the 26th of April, it was in time, the policy not requiring the attaching and making of it part of the proofs to be done within 30 days.

I come, therefore, to the second and more important contention of the defense, viz. that the work, or "working," which was done on the staircase, and the custody of the key of the room containing the staircase, vitiated the policy. It was not shown at the trial, and it is not contended in the briefs, that the fire which consumed the building originated in the room embracing the staircase, or was actually due to the negligence, or any act, of the workman who has been mentioned. No connection whatever was shown to have existed between the fire and this workman and his work on the staircase. The question, therefore, is simply this: Whether this policy was vitiated by the mere fact that a single workman took off two pieces of the hand rail of the staircase, and had custody of the key of the room in which the staircase was when the fire occurred. Insurers are the draughtsmen of their printed policies. They frame them with the primary object of protecting their own interests, and they do this with the skill of experts. The insured are not in their counsels when these instruments are framed, and know nothing of the language employed in them until the time of contracting comes. They are not experts. They have little, if any, experience of the practical effect of the forms of language employed in the policies. For these and other reasons it has become well-settled law that policies of insurance containing in printed form numerous provisions of the sort embraced in the policy now under consideration must be construed strictly, and most strongly against the insurers. Evidently, the clause of this policy providing for a forfeiture in the event of the "working of carpenters" in altering this plaintiff's building contemplated such work as would really alter the building, and the working of carpenters, in such numbers of two or more, as would really produce the risk which it was the object of the policy to provide against. I cannot bring myself to believe that it would be a liberal or a just construction of this policy to hold that half an hour's work upon an alteration that did not alter, by a solitary workman, was a practical violation of a clause of the policy making the working of two or more carpenters in altering the building a forfeiture of the insurance. No alteration was effected, and there was but one workman. To hold that this was a violation of the policy would be to construe this clause strictly against the insured, rather than strictly against the insurer. I hold that there was no actual violation of this clause of the policy. As to the key, it was that of a room which was an inconsiderable part of the premises that were burned. It was of but one room, and the fire originated in a different and distant part of the premises. The mere possession of the key of one of probably more than a hundred rooms of a building was

not such a change of custody of the building as was contemplated by the policy. I think this objection is not well taken, and must be overruled. Judgment must go for the plaintiff.