## S. B. McMASTER, Inc., v. CHEVROLET MOTOR CO.

(District Court, E. D. South Carolina. January 6, 1925.)

**1. Courts ⊚⇒340—Procedure prescribed by federal statute excludes that of state practice.**

State decisions are not binding to sufficiency of verification of petition for removal under Judicial Code, § 29 (Comp. St. § 1011), since where Congress has acted the procedure prescribed by federal statute is exclusive and must be followed.

**2. Pleading ⊚⇒301(1)—"Verification" under modern statutes requires oath.**

The word "verify" or "verification" does not always imply an oath, but the requirement of a verification in legal proceedings or pleadings under modern codes and statutes means to confirm or substantiate by oath (citing Words and Phrases, First Series, Verification).

**3. Removal of causes ⊚⇒86(9)—Verification of petition held sufficient.**

Verification of a petition for removal, which states that the allegations of the petition are true of affiant's own knowledge except such as are therein stated on information and belief and as to such matters he believes them to be true, held sufficient, though the petition does not show which allegations are stated on information and belief.

**4. Removal of causes ⊚⇒86(9)—Verification of petition may be made by attorney.**

A petition for removal may be verified by an attorney for the removing party, despite the requirements of state statutes.

**5. Removal of causes ⊚⇒103 — Insufficient verification of petition may be amended.**

That the verification of a petition for removal is defective is not ground for remand, but it may be amended.

**6. Corporations ⊚⇒668(15)—Foreign corporations held not to be "doing business" in state so as to be subject to service.**

A provision of a contract between them giving a foreign corporation the right to inspect the place of business, records, accounts, etc., of a local corporation, does not constitute "doing business" in the state by the foreign corporation in such sense as to subject it to service of process therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

**7. Courts ⊚⇒372(4)—Federal court is not bound by state decisions as to whether a contract creates an agency.**

The question whether a contract between a foreign and a domestic corporation is one of agency, through which the foreign corporation does business in the state, and subjects itself to suit therein, depends on the law of agency and the construction of the contract, both of which are matters of general law, on which a federal court is not bound by state decisions.

**8. Contracts ⊚⇒147(1, 2)—Intention governs; intention determined from contract terms.**

The intention of the parties to a contract, in the absence of any ground of public policy affecting it, must prevail, and their intention must be gathered from the terms of the contract itself.

**9. Principal and agent ⊚⇒1—Essential elements of "agency."**

There are two distinctly essential elements in an "agency." The first is that the agent acts, not for himself, but, for another; and the second is that his acts. within the scope of his authority, must be binding upon his principal (citing Words and Phrases, First Series, Agency).

**10. Corporations ⊚⇒642(4½)—Contract held not to create agency.**

A contract between a foreign corporation, manufacturer of automobiles, and a local dealer, construed, and held not to create the relation of principal and agent between them so as to constitute a doing of business in the state by the foreign corporation, contrary to the express declaration therein that it was not one of agency.

At Law. Action by S. B. McMaster, Inc., against the Chevrolet Motor Company. On motion by plaintiff to remand to state court, and by defendant to set aside service of summons and dismiss. Motion to remand denied, and motion to set aside service and dismiss granted.

Edward L. Craig, of Columbia, S. C., for plaintiff.

R. B. Herbert, of Columbia, S. C., for defendant.

ERNEST F. COCHRAN, District Judge. This action was commenced in the court of common pleas for Richland county, S. C., by the service of a summons and complaint upon A. Barrow, the manager of the Barrow-Chevrolet Company; the latter company alleged to be the agent of the defendant, the Chevrolet Motor Company. The defendant filed its petition and bond for the removal of the cause into this court. The affidavit verifying the petition is made by Charles Rivers Carroll, to the effect that he is an attorney and counselor at law in the office of John Thomas Smith, Esq., general counsel for the defendant, and that he is fully acquainted with the facts referred to in the petition; that he has read the petition and knows the contents thereof; that the allegations of the petition are true to his own knowledge, except such as are therein stated on information and belief, and as to such matters he believes them to be true; and that the reason this verification is made by him, and not by

the petitioner, is that the petitioner is a foreign corporation, to wit, a corporation of the state of New Jersey, and is absent from the jurisdiction, and that there is no person other than the deponent who is capable of verifying the petition.

The defendant appeared in this court for the sole purpose of objecting to the jurisdiction and moved to set aside the service of the summons and complaint and dismiss the action on the ground that the defendant was a foreign corporation and not doing business in South Carolina, and on the further ground that the service of the summons and complaint was not upon any agent of the defendant. This motion is based upon the affidavit of L. A. Barrow, general manager of the Barrow-Chevrolet Company, stating that a certain contract between the Chevrolet Motor Company and the Barrow-Chevrolet Company (a copy being attached to the affidavit) is the only contract existing between the said parties, and that the Barrow-Chevrolet Company is in no way the agent of the Chevrolet Motor Company, and that the only relation existing between the said companies is set forth in the said contract. The affidavit is not contradicted. The plaintiff contends that the terms of this contract show that the defendant is engaged in business in South Carolina, and that the Barrow-Chevrolet Company is the defendant's agent for such purpose, while the defendant contends that the terms of the contract show that the relationship is not one of agency but of vendor and vendee, and that the defendant is not doing business in this state.

The plaintiff has made a motion to remand the case to the state court on two grounds: (1) That the verification is defective in that the verification states that the allegations of the petition are true of the affiant's own knowledge, except such as are therein stated on information and belief, when neither the petition nor the verification states which matters are upon personal knowledge and which are stated on information and belief; and (2) that the verification is made by an attorney at law and not by an officer of the corporation.

These two motions were heard at the same time, but logically the motion to remand should be considered and disposed of first, because if the case should be remanded to the state court, this court should not and would not pass upon the motion to set aside the service.

As to the first ground upon which plaintiff seeks to have the case remanded, the plaintiff's contention is that a verification in the form made in this case is insufficient, under the state statutes and that under the act of Congress known as the Conformity Act (Comp. St. § 1537) this court would be bound by the state decisions construing those statutes. The plaintiff relies upon sections 417 and 418 of the Code of Civil Procedure of South Carolina of 1922, vol. 1, as construed in Hecht v. Friesleben, 28 S. C. 184, 5 S. E. 475, Burmester v. Moseley, 33 S. C. 251, 11 S. E. 786, and Addison v. Sujette, 50 S. C. 201, 27 S. E. 631, that where a verification of a pleading is to the effect that the same is true to deponent's own knowledge except as to those matters therein stated on information and belief, and that as to those matters he believes them to be true, such verification is defective unless it is indicated or pointed out either in the pleading or in the verification which matters are upon personal knowledge and which matters are upon information and belief. There are respectable cases which hold that where the allegations of the pleadings are in positive form, the statement in the verification as to the matters stated on information and belief may be construed as surplusage. See 22 En. Pl. & Pr. 1045, 1046. But the South Carolina cases and probably the weight of authority is to the contrary. See 31 Cyc. 542; Robinson v. Gregg (C. C.) 57 F. 186. The South Carolina cases, however, are based upon the theory that such a verification is defective because no indictment for perjury can be based thereon. There are differences between the South Carolina perjury statute and the federal perjury statute (compare perjury statutes of South Carolina, Crim. Code 1922, vol. 2, §§ 335, 332, with the federal perjury statute as contained in U. S. Criminal Code, § 125; R. S. U. S. § 5392; Compiled Stats. 1918, § 10295), and I am not prepared to hold that under the federal perjury statute an indictment could not properly be framed on a verification of this kind.

[1] The form of the verification may make the case for the prosecution more difficult, but I think that an indictment could, under the federal perjury statute, be legally based upon such a verification. However, be that as it may, I do not think that in this case I am bound by the South Carolina decisions. Congress has provided (Judicial Code, § 29; Comp. St. § 1011) that the petition for removal shall be "duly verified" and the rule is well settled that when Con-

gress has acted, the procedure prescribed by the act of Congress is exclusive and must be followed. Bracken v. Union Pacific Ry. Co. (C. C. A. 8th Circuit) 56 F. 449, 5 C. C. A. 548; In re Cockfield (D. C.) 300 F. 120; Berry v. Mobile, etc. (D. C.) 228 F. 395.

[2] Congress has not defined the words "duly verified." The word "verify" or "verification" does not always imply an oath. At common law, even in legal proceedings it did not always or necessarily imply an oath. 22 En. Pl. & Pr. 1016. Nevertheless, it is clear that the requirement of a verification under modern codes and statutes in legal proceedings and pleadings means to confirm or substantiate by oath. 22 En. Pl. & Pr. 1016; De Witt v. Hosmer, 3 How. Prac. (N. Y.) 284; Patterson v. City of Brooklyn, 6 App. Div. 127, 40 N. Y. S. 581, 582; Harp v. State, 59 Ark. 113, 26 S. W. 714; Summerfield v. Phœnix Assur. Co. (C. C.) 65 F. 292, 296; 8 Words and Phrases, First Series, p. 7295.

[3] Conceding that the verification must be by an affidavit or an oath of the party making it, I am constrained to hold that the affidavit in this case is sufficient. An affidavit in exactly this form was apparently approved by the Circuit Court of Appeals for the Eighth Circuit, in Porter v. Coble, 246 F. 244, 158 C. C. A. 404, and it was expressly decided by Judge Smith in this district that a petition verified in this form was duly verified under the act of Congress. Murray v. Southern Bell, etc., 210 F. 925.

[4] Plaintiff's second ground on the motion to remand is that the verification is made by an attorney and not by the party to the cause or plaintiff's officer. Here again, apparently, the plaintiff bases its ground upon the South Carolina statute, which provides (sections 417, 418, Code of Civil Procedure of 1922, vol. 1) in what cases the verification may be made by an attorney. But the act of Congress is exclusive and does not provide who shall make the verification upon a petition for removal. I see no reason why an attorney may not make the verification, and the federal cases so hold. Porter v. Coble (C. C. A. 8th Circuit) 246 F. 244, 158 C. C. A. 404; Berry v. Mobile & O. R. Co. (D. C.) 228 F. 395.

[5] Even, however, if I thought that the verification was defective in the particulars mentioned, I would not think it proper to remand the case on that ground, but would allow the party to amend. Murray v.

Southern Bell, etc. (D. C.) 210 F. 925; R. S. U. S. §§ 948, 954; Compiled Stats. 1918, §§ 1580, 1591; 22 En. Pl. & Pr. 1052.

[6] I will now consider the defendant's motion to set aside the service and dismiss the case. While the motion is based both upon the ground that the defendant is not doing business in the state and that the person upon whom service was made is not defendant's agent, nevertheless the two grounds may be considered together, for under the facts in the case, if the defendant is doing business at all in this state, it is by virtue of the agency created by the contract referred to, and if, per contra, the contract does not create the relation of agency, the defendant is not doing business in the state. In other words, there is no proof or claim before this court that the defendant is doing business in the state save through the acts of the Barrow-Chevrolet Company, under the terms of the contract between that company and the defendant. It is true that the plaintiff does claim that when the defendant exercises the right under the contract to come into the state and inspect the Barrow-Chevrolet's place of business, records, accounts, etc., such acts themselves constitute doing business in the state. But I do not think that such acts alone would constitute doing business in the state in the sense that the defendant would be liable to process in such state. Therefore, as I view it, a decision upon the question of agency will dispose of both grounds of the motion.

The decision on this question depends entirely upon the proper construction of the contract between the defendant and the Barrow-Chevrolet Company. The contract is an exceedingly lengthy one, and it is not necessary to set forth all of its terms. In the contract, the Chevrolet Motor Company is designated the seller and the Barrow-Chevrolet Company is designated the dealer. It provides in substance for the sale of automobiles and parts by the seller to the dealer, for which the dealer is to pay the seller prices according to seller's price list in effect at the time. The seller grants to the dealer the right to sell the Chevrolet automobiles and parts in a certain territory, and this right is exclusive with certain exceptions and restrictions. The contract does not provide that the dealer shall sell for the seller's account, but under the contract the dealer purchases outright and retails on his own account. The contract does not say in terms that the dealer shall be the agent

of the seller, but, on the contrary, contains this express provision:

"It is agreed that this agreement does not constitute dealer, associate dealer or parts depot the agent or legal representative of seller for any purpose whatsoever. Dealer is not granted any right or authority to assume or to create any obligation or responsibility, expressed or implied in behalf or in the name of the seller, or to bind seller in any manner or thing whatsoever."

From these terms of the contract it would appear that the contract is simply one of sale and the only relation created between the parties is that of vendor and vendee. The plaintiff, however, contends that there are other parts of the contract which show that the Barrow-Chevrolet Company is in fact the agent of the defendant, selling for the defendant in this state, and that the defendant is therefore doing business in this state. These parts of the contract upon which the plaintiff relies, stated briefly, are as follows: (1) The dealer agrees to make all sales in accordance with the agreement, to work and develop the territory to the satisfaction of the seller, and not to sell outside thereof, and should a sale be made outside thereof, to abide the decision of the seller as to the "division of compensation" between him and the dealer in whose territory the sale is made. (2) In the clause giving dealer exclusive rights to sell the automobiles and parts in his territory, the contract reserves, however, to the seller the right to sell any of its products to the United States or any foreign government or any department or bureau thereof or the American Red Cross "without any obligation to pay dealer any commissions or other charges on such sales." (3) Upon estimates of his needs to be furnished by the dealer, the seller determines the number of automobiles to be allotted to the dealer monthly, and all orders in excess of the allotment may be accepted or not by the seller at his option. (4) The dealer agrees to maintain a place of business, a salesroom, and service station satisfactory to the seller, and the seller has the right to inspect all records and accounts of the dealer relating to the sale and servicing of the automobiles and parts. (5) The dealer agrees, at his own expense, to comply with all requirements of which he may be notified by the seller in writing, relating to the advertising, sale, and servicing by dealer of new Chevrolet automobiles and parts. (6) Dealer is required to carry in stock new repair parts, amount and kind to be determined by the seller, seller in determining the same to be governed by the number of Chevrolet cars in dealer's territory, plus the dealer's accepted schedule as submitted from time to time. (7) Seller to have the right at reasonable times in business hours to inspect dealer's stock of repair and replacement parts, and if seller deems same insufficient, dealer agrees to order such parts as seller may recommend. (8) Dealer may appoint associate dealers to sell automobiles and parts in dealer's territory, but such appointment can only be made with the seller's approval and upon printed forms supplied by the seller, and shall be canceled upon demand of the seller. Dealer may cancel agreement with associate dealers after receiving written consent of seller. Dealer shall be responsible to seller for the use of due diligence in requiring associate dealers to perform the terms of any agreement approved by seller. (9) Contract provides that dealer for new automobiles sold may collect only certain prices and charges, including freight, handling charges, and taxes paid. (10) Seller is entitled to use the word "Chevrolet" as applied to automobile and chassis, and of good will attached thereto; if the word "Chevrolet" is used in the name under which the dealer's business is conducted, or in any sign or advertisement displayed by dealer, dealer will on termination of agreement, or upon request of seller, discontinue the use of the word "Chevrolet" or any similar word likely to mislead.

[7] On this motion the plaintiff relies on McNeill v. Electric Storage Battery Co., 109 S. C. 326, 96 S. E. 134, and Willcox & Gibbs v. Ewing, 141 U. S. 627, 12 S. Ct. 94, 35 L. Ed. 882, and contends that the South Carolina decision is binding upon the court. The defendant relies upon Burkhalter v. Ford Motor Co., 29 Ga. App. 592, 116 S. E. 333, and Banker Bros. Co. v. Commonwealth of Pennsylvania, 222 U. S. 210, 32 S. Ct. 38, 56 L. Ed. 168. The defendant contends that the question is not one of local law, and that the South Carolina case is not binding upon this court. That case is directly in point and sustains the plaintiff's contention, and if this court is bound by it, it is conclusive in this case. The South Carolina statute (Code of Civil Procedure of 1922, vol. 1, § 390) provides that the service of summons in the case of corporations may be upon certain officers or "an agent thereof." In that case, the South Carolina Supreme Court decided that under

the terms of a contract with provisions essentially similar to the contract before this court, the relationship created was that of agency, and that the corporation was doing business in South Carolina. I have come to the conclusion that the question depends, not upon any construction of the South Carolina statute, but depends upon the law of agency and the construction of the contract between the parties, and that the South Carolina case is therefore not binding upon this court, and I have also come to the conclusion with great reluctance that I cannot follow that decision.

While there is some difficulty in determining just what questions are foreclosed in the federal courts by state court decisions, nevertheless I think it is fairly well settled that the decisions of the state courts in regard to the law of real estate, construction of state Constitutions and statutes, and similar questions of purely local law, are binding upon the federal courts, but that the federal courts are not bound by state decisions upon questions of general jurisprudence, such as commercial law, the law governing contracts between parties, the law of agency, and similar questions. Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Pleasant Tp. v. Ætna, etc., 138 U. S. 67, 11 S. Ct. 215, 34 L. Ed. 864; Grand Trunk, etc., v. South Bend, etc., 227 U. S. 544, 33 S. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405; Washburn, etc., v. Reliance, etc., 179 U. S. 1, 15, 21 S. Ct. 1, 45 L. Ed. 49; note 40 L. R. A. (N. S.) 389 et seq., 433; 7 R. C. L. 1012; 25 C. J. 847 et seq.

As was said by the Supreme Court of the United States: "In matters of contract, especially, the right of citizens of different states to litigate in the federal courts of the various states, is a right to demand the independent judgments of those courts." Pleasant Tp. v. Ætna, etc., 138 U. S. 72, 11 S. Ct. 217, 34 L. Ed. 864.

The question is not one concerning the meaning of the word "agent" found in the South Carolina statute, nor does the South Carolina decision cited purport to construe the word. The question in the South Carolina case and the question before this court is not what is the purport, meaning, or construction of the South Carolina statute, for that is clear, but it is whether under the contract between the parties there has been created a relationship of agency or not, and this involves a construction of the contract and not of the statute, and is, un-

der the authorities I have cited, a question of general law and not of local law. There is another reason why the South Carolina decision in this particular case should not be deemed binding on this court. This is a case where a foreign corporation is claimed to be doing business in this state and is served with process upon a person claimed to be its agent. If such person is not the agent of the corporation, and if the corporation is not doing business in the state, any construction which the South Carolina Supreme Court might put upon the contract between the parties, or even upon the statute, which would retain jurisdiction of the state court over the parties, when in fact no such jurisdiction existed, would present a serious question whether such construction would not violate the due process clause in the Fourteenth Amendment to the Constitution of the United States (Const. Amend. 14, § 1), and if this court should adopt such construction, and entertain jurisdiction in such case, it would present a serious question whether such action would not be violative of the same clause of the Fifth Amendment to the Constitution of the United States. For these reasons, I think this question is one in which the decision of the state court should be viewed with the highest respect, and the court should, if possible, endeavor to conform to the views of that court; but it is not binding, and if this court deems that it is not the law, it is the duty of this court not to follow it.

Inasmuch as there is a direct conflict between the South Carolina case upon which the plaintiff relies and the Georgia case and other cases upon which the defendant relies, I will first consider the subject on general principles and as if there were no cases specifically in point.

[8] At the outset it is to be observed that it is simply a question of an ordinary contract between parties which they have a right to make; and whether they desire to establish simply the relationship of vendor and vendee, or to establish the relationship of principal and agent, there being no ground of public policy to interfere, they are entirely within their rights in so framing their contract as to carry out their intention. The intention of the parties in the absence of any ground of public policy must prevail, and their intention must be gathered from the terms of the contract itself. While it is true that there is an express declaration contained in the contract

to the effect that the relation established is not that of principal and agent, nevertheless if the court should reach the conclusion that by the terms of the contract they have in fact established that relationship, the court would so construe the contract despite their express declaration to the contrary. But the court has also the right, and it is the duty of the court in considering the terms of the contract to ascertain what their intention is, to give proper effect and weight to their express declaration. The express declaration is not absolutely controlling, but it is to be duly considered in the determination of the question involved.

As the question to be determined is a question of agency, it is advisable to ascertain at the outset what constitutes an "agency." The courts and text-writers have given various definitions of an agent. The definition given by Corpus Juris is probably as full and accurate as any of them. That work defines "agency" as follows:

"Agency in its broadest sense includes every relation in which one person acts for or represents another by his authority. In the more restricted sense in which the term is used in the law of principal and agent, agency may be defined as the relation which results where one person, called the principal, authorizes another, called the agent, to act for him, with more or less discretionary power, in business dealings with third persons.

"It is a representative relation, its fundamental maxim being, Qui facit per alium facit per se. The agent represents, acts for, and derives his authority from, another, his principal; he is an attorney, standing in the place of his employer. It is also a fiduciary relation which is one of trust and confidence." 2 C. J. p. 419.

The second edition of Am. & Eng. Enc. Law has the following definition:

"Agency is the relation, created either by express or implied contract, or by law, whereby one party sui juris, called the principal, constituent, or employer, delegates the transaction of some lawful business, with more or less discretionary power, to another party, called the agent, attorney, proxy, or delegate, who undertakes to manage the affair and render to him an account thereof." 1 Am. & Eng. En. L. (2d Ed.) 937.

For other definitions of agency, see 1 Words and Phrases, First Series, p. 262 et seq.; and 21 R. C. L. 817.

[9, 10] Without undertaking to review in detail all the various definitions that have been made of the term, I think it may safely be asserted that they all recognize two distinctly essential elements. The first is that the agent is a representative and acts, not for himself, but for another. The second is that his acts within the scope of his authority must be binding upon his principal. In the contract in question one may search in vain for anything showing that whatever the person termed the "dealer" is to do under the contract, he is acting for the person termed the "seller." All of the acts of the dealer are for his own account. His purchases are made for himself. His maintenance of an office, station, service rendered, sales of cars, advertising, and all of the other various features in the contract upon which plaintiff relies as establishing an agency, are acts which the dealer performs, not as the act of the seller nor for the seller, but as his own act and for himself. We may also search in vain in the contract for any authority whatever for the dealer to bind the seller. Whatever may be required of that contract of the dealer, whatever he does under that contract, the liability and responsibility are his, so far as other persons are concerned, and not the liability or responsibility of the seller. To make assurance doubly sure, the parties have expressly declared that he shall have no such authority. It is clear to my mind that no third party could hold the seller liable for any act of the dealer performed under that contract.

The only words in the contract which I find give the slightest hint of the idea of agency are the word "compensation" in that part of the contract which provides that if the dealer should make a sale outside of his territory, he should abide the decision of the seller as to the "division of compensation" between him and the dealer in whose territory the sale is made, and the word "commissions" in that part which provides that the seller has the right to sell to the government and others named "without any obligation to pay the dealer any commissions or other charges on such sales." The use of the words "compensation" and "commissions" might indicate that the parties considered that the difference between the wholesale price paid the seller and the retail price for which the article is sold to the final purchaser was in the nature of payment for services rendered to the seller,

especially in view of the fact that the word "commissions" is frequently used in reference to the charges of agents for their services. But the inference is very slight, and in my opinion not sufficient to overthrow the plain intent of the contract as evidenced by its other terms. What the parties intended by those words was simply to provide in the one case for a proper division of profits between the dealer who sold outside of his territory and the dealer whose territory he invaded, and in the other case to provide against any obligation on the part of the seller to pay the dealer for any supposed loss of profits when the seller sold to the United States or other parties mentioned in the reservation of that right.

The plaintiff lays stress upon the fact that the seller retains the control of the actions of the dealer in a number of respects, but that is not determinative of the question of agency. A person may submit his actions to the control of another without being his agent, and, conversely, one person may control the actions of another without being a principal and without giving such person any authority by his acts to bind him.

The plaintiff also lays stress upon the fact that under the contract it is the duty of the dealer to promote the interests of the seller; but this does not necessarily show the relationship of agency. There is no reason why a manufacturer or wholesaler may not require of all persons to whom he sells his goods to do all they lawfully can in making resales to promote his interests.

As I view this contract, the case is simply this: The manufacturer desires to sell his products in such manner only that his interests may be promoted. He therefore demands as a part of the price in the making of the contract that the person to whom he sells his goods shall submit to certain restrictions. The person desiring to buy the manufacturer's goods is anxious to purchase them, and in order to purchase them is willing to submit to the conditions and restrictions named. A consideration of the whole contract and all its terms shows that the parties were studiously careful to make a contract of sale and not a contract of agency. They certainly had a right to do this, and if that was their real intention it is the duty of this court to give effect to that intention.

This court has no difficulty aside from the cases cited in reaching the conclusion upon principle that the Barrow-Chevrolet Company under this contract is not the agent of the defendant and that the defendant is not doing business in South Carolina. These views are supported by the following decisions cited by the defendant: Burkhalter v. Ford Motor Co., 29 Ga. App. 592, 116 S. E. 333; Standard Fashion Co. v. McGrane Houston Co. (D. C.) 254 F. 493; Standard v. McGrane Houston Co., 259 F. 793, 170 C. C. A. 593; Banker Bros. Co. v. Commonwealth of Pa., 222 U. S. 210, 32 S. Ct. 38, 56 L. Ed. 168. See, also, cases cited in Burckhalter v. Ford Motor Co., supra.

Plaintiff cites and relies upon Willcox Sewing Machine Co. v. Ewing, 141 U. S. 627, 12 S. Ct. 94, 35 L. Ed. 882, in which a contract with a number of stipulations similar to those set out was held to create an agency. But that case is clearly distinguished from the case at bar. In that case there were many terms in the contract which showed that the parties really contemplated an agency. The agreement in that case did not contain any stipulation to the effect that the parties did not intend to constitute an agency, and furthermore in that case Ewing, who was held to be an agent, was referred to in language implying such a relation, and while of course this was not controlling, it was considered. One clause prohibited him from soliciting "trade in the territory of other agents"; another was that he would "bind all subvendors or agents" to sustain established retail prices of the company, and that he was not to "sell his appointment or agency." None of these features is found in the present contract. In addition to that in the later case of Banker Bros. Co. v. Penn., supra, while the contract was not exactly the same as that either in the case of Willcox Sewing Machine Co. v. Ewing, nor in the present case, nevertheless it was quite similar to the contract now before this court, and the Supreme Court held in this later case that the contract did not constitute an agency.

As to the decision of the Supreme Court of South Carolina in the case of McNeil v. Electric Storage Battery Co., supra, with the greatest deference to that high tribunal, I think that the court applied an erroneous test to determine the relationship of principal and agent. The whole of the opinion of the court, after stating the facts, is as follows:

"It will be seen that the appellant had absolute control of the Columbia business. It could fix the price from time to time

without any reference to the price paid by its so-called purchaser; the codefendant could sell no other batteries; the purchaser so-called must maintain a repair shop satisfactory to the appellant. It must promote, in every reasonable way, the interest of the appellant within and without its territory. It is true the contract provided that the relation of principal and agent should not exist, but when the provisions of a contract make a contract of agency then it is a contract of agency, and it makes no difference by what names the parties may call themselves. This contract gives the appellant complete control for the sale of its goods, and the business is the business of the appellant." McNeill v. Electric Storage Battery Co., 109 S. C. 330, 331, 96 S. E. 135.

From the foregoing it will be seen that the South Carolina decision is based entirely on the fact that the alleged vendor had retained control of the actions of the alleged vendee, and the conduct of the business; but as I have attempted to show above, this is not a test of agency. Instances might be multiplied where a person may retain entire control of the actions of another who would not be his agent. On the other hand, I think it is obvious that if one person constitutes another his agent, and sends him out without retaining any control, nevertheless he is his agent. The real test to be applied is the representative character of the acts which are performed, and whether or not they would bind the supposed principal. If the acts done are not in a representative capacity, or if they do not bind the supposed principal, there can surely be no agency.

As I view it, I am not bound by the South Carolina decision, and as it is based upon erroneous reasoning, I deem it my duty to follow my own conclusions, especially as they are supported by the very able opinions of other courts whose reasoning on the question involved is to my mind unanswerable.

The plaintiff argues very earnestly that when the defendant goes into the place of business of the Barrow-Chevrolet Company and exercises its rights under the contract to inspect the place, salesroom, service station, records, accounts, etc., to see if everything is satisfactory to the defendant, that the defendant is then actually doing business in South Carolina, aside from any question of agency. I cannot hold that such acts alone constitute doing business in South Carolina. I do not think that if a manufacturer sends a person into this state to inspect the place of business of persons to whom he is in the habit of selling property to see how their business is managed and things of that sort, that such action would constitute the manufacturer's doing business in this state. In addition to this, however, even if it should be conceded that those acts constitute the doing of business, nevertheless they do not create an agency, nor does the contract in this case create an agency, and the service of the summons would have to be set aside in any event on the ground that it was not served upon an agent of the defendant.

For these reasons, the plaintiff's motion to remand must be refused, and the defendant's motion to set aside the service of the summons and complaint and dismiss the action must be sustained, and proper orders will be entered accordingly.