310 P.2d 401

Weldon R. REEDER, Plaintiff and Appellant,

v.

GENERAL MOTORS CORPORATION, a corporation, Defendant and Respondent.

No. 8601.

Supreme Court of Utah.

April 30, 1957.

Charles P. Olson, Logan, for appellant.

Leonard W. Elton, H. A. Rich, Salt Lake City, for respondent.

WORTHEN, Justice.

Plaintiff appeals from a directed verdict of no cause of action in an action brought for the alleged conversion of a 1955 Buick automobile. The material facts are not in dispute. On January 3, 1955, plaintiff signed a retail car contract with Valley Motor Company, Inc., herein referred to as Valley Motor, for the purchase of a 1955 Buick. Valley Motor was an authorized Buick dealer in Logan, Utah. The Buick automobile desired by plaintiff was not in stock at the local dealers, and it was necessary to make a factory order. At the time of the negotiation of the retail car contract, plaintiff traded in a 1952 Oldsmobile for which he was allowed $2,075 trade-in allowance on the purchase price of the new Buick which retailed at $3,507.47.

The car ordered by plaintiff through Valley Motor was placed on the regular production schedule of defendant and was delivered by defendant to its customer drive away service at Flint, Michigan, hereinafter referred to as the Flint retail store, on January 18, 1955, since plaintiff had requested factory delivery. At the time the car was delivered to Flint retail store defendant executed a bill of sale on the vehicle to General Motors Acceptance Corporation, hereinafter referred to as G.M.A.C., defendants subsidiary. G.M.A.C. executed a trust receipt to Valley Motor, but retained all documents, awaiting the arrival of plaintiff. Plaintiff did not call for the car at the Flint retail store on January 20, 1955, the pre-arranged date of delivery. However, on January 25 plaintiff telephoned the Flint retail store and an unidentified telephone operator informed plaintiff that the car he had ordered was there and available for him to pick up. Plaintiff stated that he would be in Flint within the next two days to pick up the automobile. Later the same day plaintiff was informed by one of defendant's agents in Logan, Utah, that Valley Motor had

lost its credit standing with defendant. This agent also told plaintiff not to go to Flint since no car would be available for him.

Nevertheless on January 27, plaintiff arrived at Flint, Michigan, and was informed that the car he had ordered had been re-shipped to another dealer, upon order of defendant. On January 31, 1955, all documents previously executed to and by G. M.A.C. were returned to defendant. There is no evidence that either the defendant or G.M.A.C. received any payment from Valley Motor or the plaintiff to apply to the purchase of this automobile.

Plaintiff brought action against defendant for conversion of this automobile, alleging ownership of the vehicle and a right to immediate possession when defendant wrongfully reshipped it.

Plaintiff seeks to bring himself within the provisions of the Utah Trust Receipts Act[1] and Sales Act,[2] and within the class of cases and statutory law which hold that when an owner has given another sufficient indicia of ownership of a chattel, he may be estopped from asserting his ownership against a bona fide purchaser for value.[3]

The application of the Trust Receipts Act is conditioned upon the delivery of goods, documents or instruments to the trustee.[4] There was no delivery in this case of anything to either plaintiff or Valley Motor. The Sales Act provides that title passes according to the intention of the parties.[5] There was no intention on the part of defendant or G.M.A.C. to pass title until they had been paid in cash and the documents specifically provided to that effect.

It would appear that recovery can be had by plaintiff only if he is able to assert an estoppel against defendant. In the instant case plaintiff had no dealings with defendant except through its dealer, Valley Motor. The contract between defendant and Valley Motor was a contract for the purchase and sale of automobiles. It specifically provided that Valley Motor was not the agent of defendant. Dealer contracts containing such provisions have been almost universally upheld.[6]

Legal title at no time passed to plaintiff or Valley Motor. At no time did possession of the vehicle pass to plaintiff or Valley Motor. Certainly without legal title or possession in either himself or Valley Motor plaintiff could assert no estoppel against defendant.

The only time that plaintiff ever parted with any value was on January 3, 1955, when he traded in his 1952 Oldsmobile to

---

1. Title 9, Ch. 2, U.C.A.1953.
2. Title 60, U.C.A.1953.
3. See annotation 18 A.L.R.2d 816–856.
4. 9–2–1 & 2, U.C.A.1953.

5. 60–2–2 & 3, U.C.A.1953.
6. S. B. McMaster, Inc., v. Chevrolet Motor Co., D.C., 3 F.2d 469; Whitson v. Pacific Nash Motor Co., 37 Idaho 204, 215 P. 846.

Valley Motor. It should have been evident to plaintiff that he was dealing only with the dealer, for the order that plaintiff had placed with Valley Motor had not then been accepted by the defendant.

It would appear on the present facts that the necessary elements to estop defendant from asserting its legal title to the automobile are not present.

In conclusion plaintiff's right to receive the car at Flint, Michigan, was conditioned on Valley Motor's right to receive it. When Valley Motor lost that right with defendant, plaintiff lost it also.

Affirmed. Costs to defendant.

McDONOUGH, C. J., and CROCKETT, WADE, and HENRIOD, JJ., concur.