## MYERS MOTORS, Inc. v. KAISER–FRAZER SALES CORPORATION.
### Civil Action No. 874.

District Court, D. Minnesota, Fifth Division.

March 18, 1948.

James G. Nye and George W. Atmore, of the firm of Gillette, Nye, Harries, Montague, Sullivan & Atmore, all of Duluth, Minn., for plaintiff.

Doherty, Rumble, Butler & Mitchell, of St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff commenced suit in District Court, Eleventh Judicial District of Minnesota, against defendant to recover damages for breach of contract. On motion of defendant the case was transferred to this Court. The return shows service was sought "upon the within named Kaiser-Frazer Sales Corporation personally by then and there handing to and leaving with C. B. Canavan, Regional Manager of Kaiser Frazer Sales Corporation a true and correct copy" of the summons and complaint.

Defendant appeared specially for the sole purpose of making a motion to quash and set aside the service of the summons on the following grounds:

(a) The defendant is a corporation organized and existing under the Laws of the State of Michigan and was not at the time of the purported service of summons herein or ever actually or constructively in

Minnesota and was not then or ever subject to service of process within Minnesota; and

(b) The defendant has not been properly served with summons or process in this action.

The motion was heard on affidavits and testimony.

The record discloses that commencing on December 31, 1945, plaintiff entered into a deal with defendant's predecessors, arranging for a "Distributor's" and "Direct Dealer's" franchise permitting the selling and servicing of their automobiles and products. The interests, rights and liabilities of said predecessors were later acquired and assumed by defendant, and all of whom will be referred to hereafter as "defendant." Defendant was represented by what is described as a "Regional Manager" in the territory comprising Minnesota, North Dakota, South Dakota, and parts of Wisconsin and Michigan. During the times we are here concerned with, three individuals were employed by defendant as Regional Manager, residing in Minneapolis, Minnesota. One Harry W. Taylor was such Regional Manager from November, 1945, to about the end of August, 1946, at which time defendant was "merely establishing sales territory. * * * During the period of [Taylor's] managership [he] established two distributorships, one in Duluth and one in Minneapolis, the former being Myers Motors, Inc." He was on a salary basis with an expense account. He left defendant's employ before production commenced. Taylor was followed as Regional Manager by one A. A. Akins, who carried on such duties until in or about March, 1947. Akins was succeeded by said C. B. Canavan, who, like Taylor and Akins, was paid a salary and allowed an expense account.

In addition to the foregoing and prior to the service of the summons, one R. K. Berry was employed by defendant as Regional Service Manager, residing in Minneapolis, Minnesota. Berry's duties were confined to obtaining "information as to the service and repair facilities and operations provided and conducted by distributors having contracts with [defendant] and by dealers having contracts with such distributors, and to report that information by mail" to defendant at its Michigan office.

Plaintiff contends that on or about August 8, 1946, Berry called upon its president "inquiring when plaintiff would have its Service Department open, and stated that it would be necessary to have a complete Service Department in full operation before any cars would be released." Berry denies this. Plaintiff pictures Canavan as a representative of defendant, whose duties and activities brought defendant into Minnesota to such an extent that it was doing business, and that Canavan's work and occupation made him a proper person to receive service of process. Speaking for himself and defendant by affidavit and under oath when sworn in behalf of plaintiff in its opposition to the motion to quash, Canavan denied the authority claimed for him by plaintiff and said he "visited distributors and * * * had authority to visit dealers * * * only in the company of a representative of the distributor from whom the dealers bought, or alone with the permission of the distributor." He could not supervise or establish distributors. This was all accomplished by contract executed by defendant in Michigan. He investigated and recommended candidates for distributorship but the decision of acceptance was made by defendant in Michigan. He had no authority over the Regional Service Manager. They reported to defendant's Michigan office independently of each other. At the time of the service of the summons on Canavan defendant had but one distributor in Minnesota. Defendant had no bank account and made no sales in Minnesota. Canavan and Berry, in addition to residing in Minnesota, also had an office in Minneapolis. Aside from office furniture and supplies, and the use of a defendant-owned automobile by Canavan, Berry and possibly several other of its employees, defendant had no property in Minnesota. None of such employees, including Canavan and Berry, were authorized to receive service of process for defendant or incur any obligation or give any direction in its behalf in Minnesota. Defendant does not own or lease real property in Minnesota and up to the

date of service was not listed in a Minnesota telephone directory.

True, Canavan at times in connection with his work for defendant gave advice and performed acts such as assisting in terminating contracts and performing like service such as he admitted doing in contacting dealers at Crosby and International Falls. He also admitted when called to the stand by defendant that enroute to International Falls he visited a dealer at Chisholm, Minnesota, to re-sign him on a direct dealer contract. On cross-examination he qualified this admission, saying in effect that the contract required approval and execution at defendant's Michigan office. While at Crosby, Canavan met with the owner of a Kaiser-Frazer car and made arrangements to have a new motor installed at Park Rapids, Minnesota. At International Falls he arranged for termination of the local dealer contract and had the dealer execute a new dealer contract, which is still pending a financial statement of said dealer satisfactory to defendant. The foregoing illustrates some of the isolated transactions that to my mind bring the defendant into a twilight zone of doing business in Minnesota as of the time of the service of the summons on Canavan. Does such a situation warrant a trial on the merits? The answer to this important question is whether, on the date of the service of process, the defendant was actually doing business in Minnesota as contemplated by controlling authority. Maxfield v. Canadian Pac. Ry. Co., 8 Cir., 70 F.2d 982. Contending that defendant was doing business in Minnesota, plaintiff cites: Dahl et al. v. Collette et al., 202 Minn. 544, 279 N.W. 561; Loken et al. v. Diamond T Motor Car Co. et al., 216 Minn. 223, 12 N.W.2d 345; Frene et al. v. Louisville Cement Co., 77 U.S.Ct.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926. However, the decisions of the federal courts control here. Louis F. Dow Co. v. First National Bank, 153 Minn. 19, 189 N.W. 653. Each case must depend upon its own facts in showing that the essential requirement of jurisdiction by proper service has been complied with, and the record must establish that the foreign corporation was actually doing business within the state.

Green v. Chicago, Burlington & Quincy Ry., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Southeastern Distributing Co. v. Nordyke & Marmon Co., 159 Ga. 150, 125 S.E. 171. The admitted fact that Canavan had a managerial title is not controlling when the real character of his employment appears. Fawkes v. American Motor Car Sales Co., C.C. Minn., 176 F. 1010.

A federal court is required to determine, independently of a state statute, whether valid service has been made on a foreign corporation in a personal action commenced against it. The term, "doing business within the state", so as to subject the defendant to service of process, is not always susceptible of an exact definition. Stephan v. Union Pac. Ry. Co., D.C., 275 Fed. 709.

That defendant was constructively present at the time of the service is not enough. The law requires that the business relied on by plaintiff must be of such nature as to warrant the inference that the foreign corporation has subjected itself to local jurisdiction, and is by a duly authorized officer or agent within Minnesota when and where attempt is made to serve process. People's Tobacco Co., Ltd., v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas. 1918C, 537.

In my opinion the situation created by the pertinent contracts and franchises of defendant, taken together with the acts of Taylor, Akins, Berry and Canavan, did not constitute doing business in Minnesota to such an extent as to warrant the inference that defendant was present in Minnesota. Fehlhaber Pile Co. v. Tennessee Valley Authority, App.D.C., 155 F.2d 864; Whitaker v. MacFadden Publications, Inc., 70 App.D.C. 165, 105 F.2d 44; S. B. McMaster, Inc., v. Chevrolet Motor Co., D.C., 3 F.2d 469; Zimmers et al. v. Dodge Brothers, Inc., D.C., 21 F.2d 152; Minnesota Mining & Mfg. Co. v. International Plastic Corp., 7 Cir., 159 F.2d 554; Bomze et al. v. Nardis Sportswear, Inc., D.C., 68 F.Supp. 156; Landaas et al. v. Canister Co. et al., D.C., 69 F.Supp. 835; Sowl v. Union Pac. Ry. Co., 72 F.Supp. 542.

294

In arriving at the conclusion that defendant was not present or doing business in Minnesota at the time of the attempted service, I have considered everything competent and relevant in the files and record of the instant case. As already indicated, the questions raised by the motions are close, and the result reached is not free from doubt. If the Court is wrong, correction may be had with little expense.

The motions to strike made by defendant and taken under advisement by the Court on December 12, 1947, are denied, and it is so ordered.

Defendant's motion to quash and set aside the service of summons is granted, and it is so ordered.

Parties aggrieved may have an exception.