**MYERS MOTORS, Inc. v. KAISER–FRAZER SALES CORPORATION.**

Civ. No. 907.

United States District Court
D. Minnesota
Fifth Division.

Aug. 2, 1948.

James G. Nye and George W. Atmore, both of Duluth, Minn., for plaintiff.

Irving Clark and Duncan H. Baird, both of St. Paul, Minn., for defendant.

NORDBYE, District Judge.

The above entitled matter came on for hearing before the Court on the 28th day of July, 1948, at Duluth, Minnesota, upon motions of the defendant, specially appearing solely for the purposes of the motions:

"1. To quash and set aside the purported service of summons herein because:

"(a) The complaint herein names the same parties plaintiff and defendant and is substantially similar to the complaint sought to be served on October 3, 1947, by purported service of the summons and complaint therein upon the same individual upon whom purported service of summons and complaint was attempted in this action. That said prior attempted action was entitled 'Myers Motors, Inc., v. Kaiser-Frazer Sales Corporation, Civil No. 874 [D.C., 76 F.Supp. 291].'

"(b) That no showing has been made by the plaintiff herein that the facts now are in anywise materially different from the facts as they were on October 3, 1947, the date of purported service of the summons and complaint in said prior attempted action.

"(c) That the determination of this Court in said previous attempted action, by order granting defendant's motion to quash and set aside the service of summons therein, and later by order of dismissal, which latter order was entered April 12, 1948, and filed April 19, 1948, is res adjudicata and binding upon the parties herein as to this action.

"2. To quash and set aside the purported service of summons herein because:

"(a) The defendant is a corporation organized and existing under the laws of the State of Michigan and was not at the time of the purported service of summons and complaint herein or ever actually or constructively in Minnesota and was not at the time of said purported service or ever subject to service of process within Minnesota.

"(b) The purported service of summons in said prior action, Civil No. 874, was quashed and set aside, and the action dismissed, on the grounds stated in paragraph (a) immediately above, after affidavits and testimony on the facts relating to defendant's presence or absence from the State of Minnesota. Said affidavits and testimony are hereby incorporated herein by reference in support of this motion.

"(c) The defendant has not been properly served with summons or process in this action."

The Court having considered the affidavits submitted and the oral testimony adduced, having heard and considered the arguments of counsel, and being advised in the premises,

It Is Ordered that said motions be and are hereby in all things denied.

It Is Further Ordered that the defendant have twenty (20) days from the date hereof within which to answer the complaint herein.

An exception is allowed to the defendant.

### Opinion.

At the close of the testimony, the Court briefly summarized his appraisal of the evidence and announced that the motion to quash the service and to dismiss the action for lack of jurisdiction should be denied. This memorandum will attempt to set forth some of the Court's views which prompt the conclusions indicated.

The business of the defendant is the sale of motor cars. In carrying out its plan of operation in the State of Minnesota, it has established by way of franchise certain distributors in this State to whom are assigned exclusive wholesale territories and in which they appoint certain dealers to whom cars are allocated by the distributors for sale to the ultimate consumer. The franchise granted by defendant to the distributor is a Michigan contract, and the contract between the distributor and the dealer is an agreement solely between those parties. The defendant is not a party to the dealer's contract. But apparently profiting by the experience of other automobile manufacturers, defendant recognized that, in order to launch a new car on the market, to meet competition and to successfully carry on the business of marketing its merchandise, it would have to have a capable, efficient and alert group of distributors and dealers who would be competent to service and sell the cars allocated to their respective territories. Undoubtedly defendant knew that the very foundation of any national distribution of automobiles is the cooperation and standard of service rendered by the distributors and the dealers. To perfect such a distributor and dealer organization required the supervision, aid and stimulus of the home organization. This the defendant set out to do.

The organization representing the defendant in this State did not come into existence immediately. It evolved rather slowly, and took some time before it was perfected. Therefore, it was not until the early part of 1948 that such an organization in this State assumed the proportions of a complete unit. At the time the summons and complaint were served herein, the defendant had in this State a Mr. Canavan, who was the Regional Manager for the States of Minnesota, North and South Dakota, and part of Wisconsin as his territory. Mr. Berry, Regional Service Manager, had the same territory, and Mr. Wahlberg was District Manager. These representatives of the defendant company had offices in Minneapolis at 2108 Foshay Tower, which space consisted of a suite of three rooms. Mr. Canavan and Mr. Berry each had a private office. A desk was available for Mr. Wahlberg. The office staff consisted of one secretary and one stenographer. The name on the office door was "Kaiser-Frazer Sales Corporation—Regional Office." The lease of the office space is taken in the name of the defend-

ant. The defendant pays rent, provides the furniture, pays for the telephone service, and hires the office personnel. Mr. Canavan, Mr. Berry and Mr. Wahlberg are paid on a salary basis and allowed certain expenses for travel, etc., by the defendant company. It appears that Mr. Canavan spends about sixty per cent of his time in Minnesota and has five employees who are directly responsible to him. The defendant's main office at Willow Run, Michigan, furnishes Mr. Canavan with a so-called revolving expense fund of approximately $500, which is replenished from time to time as expenses are incurred by him. This fund, while deposited in the name of Mr. Canavan in one of the banks in Minneapolis, undoubtedly constitutes a trust fund in that it belongs to the defendant corporation. The balance in this fund from time to time approximates $500. Mr. Canavan is also supplied by the defendant with a petty cash fund of about $12 per week, which is cash money handled by the office personnel in the purchase of incidentals that must be obtained in connection with the maintenance of the office. Mr. Canavan styles himself as a sort of liaison officer between the defendant and its distributors, but it is apparent that his ultimate object is to contact, advise and supervise the distributors in this State, and through them, the dealers, so as to maintain the standard of efficiency and competency necessary for the successful merchandising of defendant's cars. He interviews prospective distributors, consults them, informs them as to the requirements of the defendant company with reference to the facilities to be furnished by the distributors, and recommends to the defendant company the prospective distributor who he thinks is the man suitable for such appointment. The evidence indicates that at times he has assisted in the collection of moneys due the defendant from direct dealers in this State who are in arrears; he contacts Willow Run on the telephone from Minneapolis at least once a day; a copy of every order given by the distributors to Willow Run is transmitted to him and copies of the weekly reports made to Willow Run by the distributors and others are likewise transmitted to him. The files kept by him in Minneapolis are replete with copies of various reports, correspondence, bulletins, and data which he maintains in order to more effectually carry on the duties assigned to him in Minnesota by the home office. The franchise between the distributors and the defendant, among other things, requires that the distributors maintain a certain system of accounting. Mr. Canavan inspects from time to time the books of the distributors to see that this system of accounting, or one comparable thereto, is maintained. At times he calls meetings in this State of the accountants and bookkeepers of the distributors when the accountant from Willow Run comes to Minneapolis, so that the local accountants may be advised of the standards and methods in accounting recommended and required by the home office. The number of cars allocated to the distributors in this State clear through him, and from time to time he obtains firm orders for the cars which are allocated to the distributors by the defendant.

Mr. Berry has some ten men employed by the defendant under his supervision and these employees are responsible to him. He has an assistant Regional Service Manager. There are four district service representatives in Minnesota. As Regional Service Manager, the district service representatives who are employed in this State by the defendant are under his supervision. These district service representatives are on the road calling on dealers five days a week. They assist the dealers' service men with their problems, particularly mechanical problems, and when they visit a dealer they are required to make a report of the dealer's activities covering a tool survey, mechanical report, credit report, production report, and contact report. All of these reports are transmitted to the home office at Willow Run and a copy is forwarded to Mr. Berry. Accompanying each car sold by the dealer is the usual manufacturer's warranty. The service representative determines whether credit authorizations should be issued to the dealer or distributor by reason of any breach of warranty or by reason of any other circumstances which seem to justify some adjustment on account of any mechanical difficulties with cars that

may have been sold. Such credit authorizations issued by the district service representative may involve minor repairs, or may even involve installation of a new engine. These credit authorizations can be reviewed at Willow Run, but apparently any reversals of the judgment of the district service representative in this regard are infrequent. Mr. Berry is clothed with authority to hire district service representatives from time to time and does so subject only to their passing a physical examination at Willow Run.

Mr. Wahlberg is the District Manager. He is on the road continuously in company with the representative of the distributors, and his entire time is confined to calls on dealers throughout the State. He assists the distributors' representative in consulting and aiding the dealer in his sales problems. If the dealer does not maintain a clean, suitable display space for the cars, or if he does not display suitable Kaiser-Frazer signs on his place of business, or if any other conditions exist which are not consistent with Kaiser-Frazer standards, the dealer's attention is called to such conditions, and both the distributors' representative and Mr. Wahlberg endeavor to increase the interest of the dealers in pushing the sales of cars, and they cooperate in attempting to raise the standards of the dealers in selling the defendant's merchandise. Generally it may be stated that Mr. Wahlberg endeavors to stimulate greater interest in an aggressive sales campaign on the part of the dealer, as well as the distributor, and if car sales are lacking he calls that to the dealer's or distributor's attention and so reports to the main office. Reference may be made to the report of Mr. Wahlberg to the home office under date of March 17, 1948, wherein he details his visit to a distributor and makes the following comment:

"Checking into his retail sales, only two cars had been sold in Duluth proper this month so far. I told him this was not as it ought to be. He said he would do some concentrated selling and demonstrating from now on.

"Recommended that he do a better selling job, both retail at his own place as well as dealer retail selling."

It may be noted that the defendant company owns eight automobiles registered in Minnesota in its name. They are used by the various representatives of the defendant company in carrying on the business of the defendant company in this State. They are of a value of approximately $16,000. When a car has been driven about 5,000 miles, it is sold with the defendant's authorization in Minnesota, and thereafter defendant furnishes the employee with a new car to be used by him in this State.

In addition to the Regional Manager, the Regional Service Manager, and the District Manager who reside in Minneapolis and are furthering the business interests of the defendant in this State, a Mr. Pottratz is designated as Parts and Accessory Representative and a Mr. Murphy is designated as a Business and Accounting Representative, and they call on the dealers and distributors in this State. Their particular duties are apparently set forth in the titles of their positions.

The defendant maintains a so-called service school at Willow Run and the district service representatives are continuously urging dealers to attend this school and the daily reports sent out by the service representatives to the defendant have the following question stamped thereon which must be answered by the representative:

"(a) Has dealer sent man to Willow Run service school?

"(b) If not, explain."

A typical answer if the dealer has not attended the school runs something like this: "Dealer will attend school at later date. Not plan to now due to press of business. I convinced him that he needs schooling and he stated that he would attend as soon as possible."

The defendant has inaugurated a so-called "Spring Drive Away" celebration at Willow Run. Distributors, as well as dealers, throughout the Nation are requested to attend and drive away from Willow Run the cars which may be allocated to them. It is to be gathered that this event is assumed to stimulate interest in new cars that are released, and obviously to increase the sales. The District Manager of Minnesota, as well as other representa-

tives of defendant in this State, recommend, encourage and request that the local distributors and dealers attend this event and are required to report the results of their contacts in this regard to the Willow Run office.

It seems fair to conclude that the purpose of defendant's organization in this State is to keep the defendant company advised of the activities and progress of the distributors and dealers in this State, to aid and assist the distributors and dealers with their problems in selling and servicing Kaiser-Frazer cars, to stimulate interest in increasing sales of such cars, and to improve the standard of efficiency of such dealers and distributors in the sale and servicing of such cars. All these activities look to the ultimate end that a fulfillment of the duties which devolve upon the defendant's representatives herein will build a stronger organization of distributors and dealers and thereby increase the sales of defendant's merchandise. The men assigned to Minnesota by defendant are members of an organization permanently located in this State, and are undoubtedly indispensable to the defendant in the sale of its cars herein. In other words, they are an integral part of defendant's company. The business conducted herein does not constitute isolated instances or incidental transactions. They constitute an indispensable adjunct to defendant's selling organization. To contend under such a state of facts that defendant's activities are not sufficient to manifest its presence in this State is to completely ignore a factual situation which overwhelmingly establishes the contrary.

The situation is to be distinguished from that which was presented to Judge Donovan when he granted the motion to quash the service of the summons in the prior suit. D.C., 76 F.Supp. 291. There, the matter was presented primarily upon affidavits, although there was testimony given by Mr. Canavan. However, the defendant at that time was more or less at the threshold of its activities in this State. They were not well defined. Numerous changes have taken place in the factual situation from that which was presented to Judge Donovan. I am clear that the doc-

trine of res judicata does not apply and that the mass of additional facts presented to me regarding defendant's activities in this State at the time of the service of the summons herein will only permit a finding that the motion to quash the service and to dismiss the action for lack of jurisdiction must be denied.

Let this memorandum be made a part of the foregoing order.