Arthur T. McMENOMY and Charles R. McMenomy, Plaintiffs,

v.

WONDER BUILDING CORPORATION OF AMERICA, Defendant.

Civ. No. 3-59 229.

United States District Court
D. Minnesota,
Third Division.

Sept. 26, 1960.

214

McMenomy & Hertogs, by Edward B. McMenomy, Hastings, Minn., for plaintiffs.

O'Connor, Green, Thomas & Walters, by Frederick W. Thomas and Joe A. Walters, Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

Defendant's alternative motion for a dismissal or for summary judgment challenges the instant civil action commenced by plaintiffs to recover damages for alleged breach of contract. The motion was called for hearing at the June 27, 1960, Special Term of Court in St. Paul, Minnesota.

The file contents for present purposes are made up of the summons and complaint [1], the answer, discovery documents, and defendant's notice of said motion, together with supporting and opposing affi-

1. The complaint conforms to the rule of brevity and is as follows:

"I. That plaintiffs, and each of them, are citizens and residents of the State of Minnesota, and that defendant is a corporation incorporated under the laws of the State of Illinois, and doing business within the territorial limits of the State of Minnesota. The matter in controversy exceeds, exclusive of interest and costs, the sum of Ten Thousand ($10,000.00) Dollars.

"II. That on or about the 14th day of September, 1954, the plaintiffs and defendant entered into a written contract, a copy of which is attached to this complaint as Exhibit 'A'.

"III. That plaintiffs fully performed said contract until defendant breached the same by issuing a franchise to Peavey Building Service, a division of F. H. Peavey & Co., to sell 'Wonder Building' in the territory given exclusively to plaintiffs as per said Exhibit 'A', which franchise was issued on or about the 1st day of December, 1958.

"IV. That thereafter, and until receipt of a notice of cancellation of said contract from defendant on or about August 28, 1959, plaintiffs attempted to continue performance of said contract but were prevented from doing so by defendant's continuing and repeated breaches thereof.

"V. That plaintiffs would still be performing said contract and enjoying the benefits therefrom and the profits of said performance, were it not for defendant's breach and unreasonable cancellation thereof without just cause; and that plaintiffs would have continued to profit therefrom indefinitely.

"VI. That because of defendant's breach of said contract and cancellation thereof without cause, and because of its other acts making it impossible for plaintiffs to perform the same, plaintiffs have lost, and will in the future lose, profits in the amount of Two Hundred Fifty Thousand ($250,000.00) Dollars.

"Wherefore, plaintiffs demand judgment against defendant in the amount of Two-

davits. Oral testimony was not presented.

By answer served and filed, defendant admits diversity and denies the amount involved as alleged in the complaint. Defendant pleads "the Court lacks jurisdiction" and alleges contract "cancellation * * * effective September 26, 1959."

The Court is satisfied from a review of the file contents that diversity and the amount involved are present, and that the complaint states a claim. The sole issue for decision in the case at bar is whether or not the return of service as made and certified to by the United States Marshal, constitutes lawful service of process.[2]

Resort must be had to the file contents to obtain the facts pertinent to determination of the claimed service of process. The contract in question is pleaded by reference and made a part of the complaint. It speaks for itself. It was entered into by the parties to the present case following an advertisement placed in a Minneapolis newspaper by defendant soliciting inquiries from those interested in distributing defendant's products. What followed amounts to an offer by defendant and acceptance by plaintiffs, reduced to terms specified in said contract. By it plaintiffs "are authorized to distribute 'Wonder Building' as a 'Middleman' and not as our agent, on an exclusive basis in the State of Minnesota, with the exception of * * * [16 named counties.] * * *. Full information of your appointment as authorized distributor has been given to our Advertising Department * * *." Defendant, a Delaware corporation, maintains its principal place of business in Chicago, Illinois. The distributorship contract was executed by plaintiffs in Minnesota and mailed to defendant in Chicago, where execution was concluded by defendant corporation. Occasionally, defendant's agents called on Minnesota customers with plaintiffs. Negotiations to some extent were carried on by defendant's agent and plaintiffs in Minneapolis, Minnesota, and calls were made by a representative of defendant on plaintiffs in Minnesota in connection with "sales promotions" and to adjust a claim arising out of the collapse of a Wonder Building at Renville, Minnesota.

Prices quoted to plaintiffs by defendant were f. o. b. Chicago plant, and plaintiffs in turn would resell to their customers f. o. b. the job site. In November, 1958, F. H. Peavey & Company, hereinafter referred to as Peavey, of Minneapolis, undertook to sell Wonder Buildings in Minnesota, and continued its efforts to hold itself out to sell defendant's products up to May 19, 1960, in the areas where Peavey was operating by advertising in Grain and Feed Review and by circulars to that end, and also by advertising that Peavey had a franchise from defendant, in December, 1958. While active in the foregoing respect, Peavey, as a matter of fact, did not have a franchise from defendant.

Nowhere in the course of plaintiffs' dealings with defendant did the latter appear to have direct contacts with customers or work performed in the Minnesota area assigned to plaintiffs, other than as above recited.

20 Minnesota Statutes Annotated, Section 303.13 is the law relied on by plaintiffs to effectuate service of process in the instant case. It provides as follows:

Hundred Fifty Thousand ($250,000.00) Dollars plus interest, costs and disbursements."

2. The return reads as follows:
"I hereby certify and return, that on the 4th day of November, 1959, I received this summons and served it together with the complaint herein as follows: on Wonder Building Corporation of America, by serving on the State of Minnesota, by Joseph L. Donovan, Secretary of State by handing to and leaving a true and correct copy thereof with Arnold E. Anderson, Clerk and authorized to accept service at State Capitol, St. Paul, Minnesota on November 4, 1959 at 11:25 AM and at time of service paid to him $6.00 as required by section 13, (2), (b), chapter 303.13 Minnesota Statutes 1957. C. Enard Erickson, United States Marshal, by John A. Mortinson, Deputy United States Marshal."

[Subdivision 1(3)] "If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. * * "

Do the file contents support the service of process certified to in footnote 2, supra?

Plaintiffs contend that defendant is a foreign corporation "doing business" in the State of Minnesota, that it has failed to qualify to do business here as provided by Minnesota law, and that because of this failure it will be deemed to have appointed the Secretary of State of the State of Minnesota as its agent for service of process.[3] That defendant, as a foreign corporation, has made a contract with residents of the State of Minnesota to be performed, in whole or in part, in the State of Minnesota, and therefore, under Minnesota law, shall be deemed to be doing business in Minnesota, and shall

be deemed equivalent to the appointment by defendant of the Secretary of the State of Minnesota as its agent for service of process.[4]

Defendant contends cases cited by plaintiff to support the proposition that defendant is doing business in this state are substantially distinguishable on their facts from the instant case, and therefore, defendant's activities in the State of Minnesota cannot be characterized as "doing business." That in seeking to establish that the franchise agreement was a contract to be performed in whole or in part in the State of Minnesota, plaintiffs have argued from cases which are likewise substantially distinguishable on their facts from the instant case and, therefore, provide no authority contrary to defendant's position.

Defendant states its case in these words: "The statute quoted does not apply to the facts in this case so as to authorize service of process thereunder because neither plaintiffs' nor defendant's obligations under the distributorship agreement (Complaint, Exhibit 'A') were performed or were to be performed in whole or in part in the State of Minnesota. If on the facts of this case, the statute sanctions service of process thereunder upon defendant by mail, to apply the statute to defendant would violate Section 1, Amendment XIV of The Constitution of the United States." [5]

■■ Movant has the burden in the present case. Has it carried that bur-

3. Plaintiffs cite in support of their first contention:
   Schilling v. Roux Distributing Co., 240 Minn. 71, 59 N.W.2d 907; State v. Northwestern States Portland Cement Co., 250 Minn. 32, 84 N.W.2d 373.

4. Plaintiffs cite in support of their second contention:
   International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Bard v. Bemidji Bottle Gas Co., D.C.Minn., 23 F.R.D. 299; Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670.

5. Arguing against jurisdiction, defendant cites:

International Shoe Co. v. State of Washington, supra; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141; L. D. Reeder Contractors of Ariz. v. Higgins Industries, 9 Cir., 265 F.2d 768; Bard v. Bemidji Bottle Gas Co., supra; Mueller v. Steelcase, Inc., D.C. Minn., 172 F.Supp. 416; Kulberg v. Fraternal Union of America, 131 Minn. 131, 154 N.W. 748; Schilling v. Roux Distributing Co., supra; Hartmon v. National Heater Co., 240 Minn. 264, 60 N.W.2d 804; State v. Northwestern States Portland Cement Co., supra; Beck v. Spindler, supra.

den? We are dealing here with contract, as distinguished from tort. The cases relied on by movant in this Court arose out of tortious conduct. No case has been cited and the Court has found none dealing with the type of statute providing for service of process as herein relied on by plaintiffs in footnote 2, supra. The two citations of cases decided by Judge Nordbye [6] are to be distinguished from the instant case, for each was initiated as a tort action and the equitable practice of contribution was interwoven in one of them.[7] It would appear from the file contents, absent oral testimony, that defendant was sufficiently active in Minnesota to indicate its presence therein.[8]

■■ It may very well follow at trial that, upon proper showing on behalf of defendant, plaintiffs may find themselves enmeshed in a factual situation supporting defendant's present contention that its "activities within the state [of Minnesota] were not sufficient to manifest its 'presence' there and * * * that consequently it was a denial of due process * * * to subject [defendant] to suit [in Minnesota] * * *. 'Presence' in the state * * * has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." [9] " * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." [10] " * * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " [11]

In the words of Mr. Justice Black, the "trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." [12]

Consistent with the foregoing, defendant's alternative motion to dismiss or for summary judgment must be denied.

It is so ordered.

An exception is allowed to the defendant.

6. Bard v. Bemidji Bottle Gas Co., supra; Mueller v. Steelcase, Inc., supra.

7. Northern Pacific Railway Co. v. Zontelli Bros., Inc., D.C., 161 F.Supp. 769, 773; Myers Motors v. Kaiser-Frazer Sales Corp., D.C., 80 F.Supp. 18, 22.

8. International Shoe Co. v. State of Washington, supra, 326 U.S. 310, 315, 66 S.Ct. 154, 157.

9. Id., 326 U.S. at page 317, 66 S.Ct. at page 158.

10. Id., 326 U.S. at page 319, 66 S.Ct. at page 160.

11. Id., 326 U.S. at page 316, 66 S.Ct. at page 158.

12. McGee v. International Life Ins. Co., supra, 355 U.S. at page 222, 78 S.Ct. at page 201, Jung v. City of Winona, D.C. Minn., 71 F.Supp. 558, 559.